603 A.2d 602

**George N. HILL, Jr.**

v.

**TRAILMOBILE, INC., Blue Line Transfer Co., Central Hydraulic Co., Milwaukee Cylinder, a Versa/Tek Co., Broomall Truck Repair Co., and Robert Carl Company.**

**Appeal of TRAILMOBILE, INC.**

Superior Court of Pennsylvania.

Argued Dec. 11, 1991.

Filed Feb. 19, 1992.

322

R. Bruce Morrison, Philadelphia, for appellant.

Robert M. Ruzzi, Philadelphia, for Milwaukee Cylinder, appellee.

Henry P. Stonelake, Philadelphia, for Robert Carl Co., appellee.

Before CIRILLO, DEL SOLE and MONTEMURO, JJ.

CIRILLO, Judge:

This is an appeal from an order entered in the Court of Common Pleas of Delaware County. We affirm.

This cause of action in tort arises from personal injuries sustained by George H. Hill, Jr. on February 29, 1984 when a truck trailer he was unloading suddenly shifted and threw him backward onto the floor of the trailer. Hill injured his lower back and head and sustained internal injuries to the groin area which resulted in chronic back pain and ultimately the loss of one testicle. The accident occurred when an allegedly defective power gear[1] in a hydraulic lift, which was used to raise the trailer to the level of the loading platform, failed and caused the hydraulic lift to collapse. In May of 1985 Hill filed an action in strict liability against Blue Line Transfer Company ("Blue Line"), the company which had hired him to drive the trailer, and appellant Trailmobile, Inc. ("Trailmobile"), the manufacturer of the trailer.

Trailmobile and Blue Line cross-claimed, each asserting that the other was liable for Hill's injuries. Thereafter, Trailmobile and Blue Line entered into a stipulation and agreement to join as additional defendants the companies responsible for the design, manufacture and sale of the allegedly defective power gear. Pursuant to their agreement, in January of 1986 Blue Line and Trailmobile joined

---

1. "Power Gear" is the trade name originally used by the Central Hydraulic Company and now used by Milwaukee Cylinder to describe a line of hydraulically powered products used primarily to adjust a vehicle's height. The power gear in question was manufactured by Central Hydraulic sometime prior to 1981.

Central Hydraulic Company, the manufacturer of the defective power gear, and Milwaukee Cylinder, which had purchased Central Hydraulic, as additional defendants. In August of 1986, Blue Line and Trailmobile also joined the Broomall Truck Repair Company, which had been responsible for servicing the trailer, and the following November they joined Carl Young Company ("Carl Young"), the liquidators in the sale of Central Hydraulic.

In August of 1987, more than two years after Hill filed his complaint, Blue Line and Trailmobile petitioned the trial court for leave to join W.T. Young & Co., the parent company of the then-defunct Central Hydraulic, as the final additional defendant. Plaintiff Hill objected to the proposed joinder as unfair and prejudicial to him. Citing the four additional defendants already joined and the massive discovery requests their joinder had entailed, Hill argued that granting another joinder would create an unreasonable and burdensome delay in resolving his claim. Moreover, Hill contended, the requested joinder would not promote judicial economy because the asserted liability of W.T. Young & Co. was based on an entirely different factual background and involved separate and distinct legal issues from those raised in his complaint.[2] The trial court denied the requested joinder, "[d]ue to the running of the statute of limitations[3] and the long delay in Hill having his claim

**2.** Hill was suing in strict liability for the personal injuries he sustained. If Trailmobile had been permitted to join W.T. Young & Co., Trailmobile would have sued for indemnification under the estoppel agreement W.T. Young & Co. signed as a condition of the sale of Central Hydraulics to Milwaukee Cylinder. *See* footnote 6, *infra.*

**3.** The statute of limitations for personal injury actions is two years. *See* 42 Pa.C.S.A. § 5524. The statute of limitations began to run on February 29, 1984, the date Hill was injured. On June 12, 1987, fifteen months after the statute of limitations had expired, Trailmobile petitioned the trial court to join additional defendant W.T. Young & Co.

Pennsylvania Rule of Civil Procedure 2255 provides:
(a) The procedure, including pleadings, between the party joining an additional defendant and the additional defendant shall be the same *as though the party joining the additional defendant were a plaintiff and the additional defendant were a defendant.* (emphasis added).

pursued." (Trial court opinion, page 5). *See Kovalesky v. Esther Williams Swimming Pools*, 345 Pa.Super. 95, 105, 497 A.2d 661, 666 (1985) (The rules pertaining to joinder are "an attempt to provide a means to simplify and expedite the disposition of matters involving numerous parties ... without subjecting the original plaintiff to unreasonable delay in the prosecution of his portion of the litigation.")

Blue Line and Broomall Truck Repair Company settled with Hill through a joint-tortfeasor release, thereby eliminating themselves as parties to the suit. The remaining three companies, Trailmobile, Milwaukee Cylinder and Carl Young also entered into a joint tortfeasor release prior to trial, with each defendant paying Hill $76,666.66. However, the companies agreed to proceed to trial to have the court determine which of the three of them alone was responsible to Hill for the injuries caused by the defective power gear.

In preparation for trial the three defendants entered into an Agreement and Stipulation of Case Stated, and in March of 1991 the trial court heard argument on the indemnification issue. The court found in favor of Milwaukee Cylinder and Carl Young Company, and ordered Trailmobile to pay each company $76,666.67.[4] After its post-trial motions were filed and denied, Trailmobile filed this timely appeal.

Trailmobile presents one issue for our review:

> Thus Trailmobile, as the party seeking to join additional defendant W.T. Young & Co., was bound by the two year statute of limitations applicable to plaintiffs. *See* Goodrich Amram 2d § 2255(a):3.

4. The Stipulation and Agreement on Case Stated provides:
> 13. In the event that it is determined that Trailmobile lacks standing to advocate and recover on the "product line" exception to the general rule on successor liability, then judgment is to be entered in favor of Milwaukee Cylinder and Robert Carl Company and against Trailmobile, requiring Trailmobile to reimburse Milwaukee Cylinder and Robert Carl Company for Seventy–Six Thousand Six Hundred Sixty–Six [Dollars] and Sixty–Six Cents (*$76,666.66*) without interest. (emphasis added)

> However, in its opinion the trial court stated:
> "The remaining defendants, Trailmobile, Robert Carl Company and Milwaukee Cylinder entered into a final settlement with Hill for his injuries with each paying *$72,000.00*. The terms of the settlement agreement provided that the three defendants reserved their rights

Whether the Court below erred in concluding that the lessor of a truck trailer which contained a latently defective component part was not entitled to indemnification from the product line successor to the manufacturer of that component part?

■ In Pennsylvania,[5] when one company sells or transfers all of its assets to another company, the purchasing or receiving company is not responsible for the debts and liabilities of the selling company simply because it acquired the seller's property. *Husak v. Berkel*, 234 Pa.Super. 452, 457, 341 A.2d 174, 176–77 (1975). In order to hold the acquiring, or successor, company responsible for the seller's liabilities one of the following must be established: 1) the purchaser expressly or impliedly agreed to assume the obligations; 2) the transaction amounted to a consolidation or merger; 3) the purchasing corporation was merely a continuation of the selling corporation; 4) the transaction was fraudulently entered into to escape liability; and 5) the transfer was without adequate consideration and no provisions were made for creditors of the selling corporation. *Id.* See also *Simmers v. American Cyanamid*, 394 Pa.Super. 464, 576 A.2d 376 (1990).

■ Unjust decisions often resulted when the limited exceptions could not provide relief for plaintiffs suing successor corporations in strict liability for personal injuries caused by defective products. Therefore, in 1981 this court

to have the Court determine which of them was liable to Hill for the defective power gear manufactured and sold by Central Hydraulics Company." (emphasis added)
As the court's order utilized the $76,666.66 figure, we can only surmise that the $72,000.00 referred to in the opinion is a typographical error.

5. Paragraph ten of the Stipulation and Agreement on Case Stated provides:
10. The parties further agree that Pennsylvania law is applicable to and dispositive of the successor liability issues to be determined by the trial and appellate courts in this case stated proceeding, and that, for the purposes of this case, that law includes the product-line exception adopted in *Dawejko* [*v. Jorgensen Steel Co.*, 290 Pa.Super. 15, 434 A.2d 106].

adopted the product-line exception to successor liability which provides that:

Where one corporation acquires all or substantially all the manufacturing assets of another corporation, even if exclusively for cash, and undertakes essentially the same manufacturing operation as the selling corporation, the purchasing corporation is strictly liable for injuries caused by defects in units of the same product line, even if previously manufactured and distributed by the selling corporation or its predecessor.

*Dawejko v. Jorgensen Steel Company,* 290 Pa.Super. 15, 23, 434 A.2d 106, 110 (1981), quoting *Ramirez v. Amsted Industries, Inc.,* 86 N.J. 332, 431 A.2d 811 (1981).

Prior to adoption of the product-line exception, courts throughout the country had provided relief for plaintiffs injured by a product manufactured by a predecessor corporation by expanding or extending one of the five recognized exceptions. However, such extension of the "continuation" exception was generally restricted to situations in which there was only one corporation after the transfer and there was also a common identity of officers, directors, and stock between the selling and purchasing corporations. *Id.,* 290 Pa.Superior Ct. at 19, 434 A.2d at 107–08. Plaintiffs injured by products manufactured by predecessor corporations purchased by multiple corporations, or which shared no identity of corporate structure were, unfortunately, left without a remedy in strict liability. Even the expansion of the "continuation" exception to include successor corporations which were in a business of a similar nature failed to provide adequate relief. *Id.*

In becoming one of the few states to adopt the product-line exception to successor liability, this court explained its change in philosophy as "an attempt to implement the 'social policies underlying strict products liability.' " *Id.,* 290 Pa.Superior Ct. at 26, 434 A.2d at 111, quoting *Ramirez v. Amsted Industries, Inc.,* 86 N.J. 332, 358, 431 A.2d 811, 825 (1981). The court explained that strict tort liability for

manufacturers of defective products rests on the proposition that

> " 'the cost of an injury and the loss of time or health may be an overwhelming misfortune to the person injured, and a needless one, for the risk of injury can be insured by the manufacturer and distributed among the public as a cost of doing business.' " ... Thus, "the paramount policy to be promoted by the rule is *the protection of otherwise defenseless victims of manufacturing defects* and the spreading throughout society of the cost of compensating them." (citations omitted).

*Id.,* 290 Pa.Superior Ct. at 22, 434 A.2d at 109 (emphasis added).

In adopting the product-line exception to successor liability for the Commonwealth, the court was particularly concerned that the underlying policy considerations which prompted adoption of the exception be understood and used as a guideline in its application. The court also stated that the product-line exception to the general rule of no liability for successor corporations may *only* be applied when the following three circumstances have *each* been established:

> (1) the virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business, (2) the successor's ability to assume the original manufacturer's risk-spreading rule, and (3) the fairness of requiring the successor to assume a responsibility for defective products that was a burden necessarily attached to the original manufacturer's good will being employed by the successor in the continued operation of the business.

*Dawejko,* 290 Pa.Super. at 22, 434 A.2d at 109, quoting *Ray v. Alad Corp.,* 19 Cal.3d 22, 136 Cal.Rptr. 574, 560 P.2d 3 (1977). The court continued to explain that "[w]e also believe it better not to phrase the new exception too tightly. Given its philosophical origin, it should be phrased in general terms, so that in any particular case the court may consider *whether it is just to impose liability* on the successor corporation." *Id.,* 290 Pa. Superior Ct. at 26, 434 A.2d at 111 (emphasis added).

■ Original defendant Trailmobile is now asking this court to extend the product-line exception to successor

liability to apply for the first time to *defendants*. This we are unwilling to do. The product-line exception is a remedy which was created to afford relief to *plaintiffs*, victims of manufacturing defects who, due to the sale or transfer of the manufacturing corporation, otherwise would have no avenue of redress for injuries caused by defective products. *Dawejko, supra.* Trailmobile's effort to obtain indemnification from co-defendants through the product-line exception subverts the policy considerations that prompted adoption of the rule. *See Dawejko, supra.* In addition, the record reveals that Trailmobile failed to join W.T. Young, Inc., parent company of the now-defunct Central Hydraulic, and the entity responsible for all liabilities of Central Hydraulic,[6] as an additional defendant on a timely basis. As a result of its own failure to act, Trailmobile was barred from seeking indemnification from W.T. Young, Inc. in this particular cause of action. Consequently, there is no unjust result to compel an extension of the plaintiff's exception to successor liability. *Id.* Neither are we inclined to add additional exceptions to the rule of no liability for product-line successors when the defendant has alternative avenues of redress.

Trailmobile's efforts to extend the product-line exception in this case is particularly inappropriate. In *Dawejko*, the plaintiff's only remedy was against the corporation that manufactured the "Mansaver" lifting machine, or its successor. Here, plaintiff Hill had causes of action in strict liability against multiple defendants. Similarly, Trailmobile has several co-defendants from which it may seek indemnification. Thus Trailmobile cannot even satisfy the first element—the virtual destruction of the plaintiff's [or, as suggested, defendant's] remedies against the original manufacturer—of the underlying requirement for the application of

---

**6.** Paragraph three of the "Estoppel Certificate" provides:

3. The undersigned will pay, discharge or otherwise satisfy, on a timely basis, all liabilities of Central Hydraulics, including, but not limited to warranty and product liability claims, and hereby hold Milwaukee Cylinder and Carl Co. harmless for any liability, cost or damage arising out of such liabilities or claims. The undersigned have no claims against Milwaukee Cylinder.

the product-line exception. *Dawejko, supra.* Moreover, neither Carl Young Company nor Milwaukee Cylinder, the co-defendants from which Trailmobile is seeking indemnification, can properly be considered a successor corporation to Central Hydraulic.

 In analyzing the relationship between Central Hydraulic and Carl Young Company, we find that Carl Young does *not* fit the criteria of a successor corporation. Carl Young is not a manufacturing company; it is the liquidation company Central Hydraulic contacted to sell its assets after Central Hydraulic's own negotiations with Milwaukee Cylinder failed. Carl Young purchased the assets of Central Hydraulic for resale, and held title to them only sufficiently long to locate a qualified buyer, which turned out to be Milwaukee Cylinder. Milwaukee Cylinder then purchased the assets of Central Hydraulic from Carl Young. Carl Young Company never "under[took] essentially the same manufacturing operation as the selling corporation," which is a prerequisite to successor liability. *Dawejko, supra.* Therefore, even if we were to extend the application of the product-line exception to defendants, Trailmobile would be unable to proceed under that theory of law. Carl Young Company is not a product-line successor to Milwaukee Cylinder.

 Conversely, after applying the *Ramirez* definition of successor corporation adopted in *Dawejko, supra,* we conclude that Milwaukee Cylinder *is,* in fact, a product line successor to Central Hydraulic. The record reveals that Milwaukee Cylinder did acquire substantially all of the manufacturing assets—the stock on hand, equipment, patents, licenses, and so forth—of Central Hydraulic. Milwaukee Cylinder manufactured and sold power gears, under the trade name "Power Gear," in addition to selling the remaining inventory of "Power Gear" that was included in the purchase of Central Hydraulic. Moreover, Milwaukee Cylinder satisfies two of the three *Ray* prerequisites adopted by the *Dawejko* court. As an ongoing enterprise Milwaukee Cylinder is able to adopt Central Hydraulic's risk-

spreading rule, and Milwaukee Cylinder's press releases advertising their assumption of the "Power Gear" product line indicates the fairness of imposing liability upon Milwaukee Cylinder. However, Milwaukee Cylinder's purchase of Central Hydraulic did *not* virtually destroy the plaintiff's remedies against the original manufacturer, *Dawejko, supra.* W.T. Young & Co. expressly assumed all the liabilities of its subsidiary, Central Hydraulic, in the estoppel certificate. *See* footnote three, *supra.*

Although contracts eliminating or severely restricting the liability of a purchasing corporation are disfavored in the law of Pennsylvania, *Dilks v. Flohr Chevrolet,* 411 Pa. 425, 192 A.2d 682 (1963), they are nevertheless valid if they: 1) are construed strictly, 2) spell out with great particularity the intention of the parties, 3) are construed against the party seeking immunity from liability, and 4) the burden of establishing immunity from liability is upon the party asserting it. *Husak, supra.* We have thoroughly reviewed the Estoppel Certificate and find that under the *Dilks* criteria the agreement is sufficiently particular to relieve Milwaukee Cylinder of liability for defective products manufactured by Central Hydraulic. Trailmobile's remedy for indemnification was to join W.T. Young & Co. as an additional defendant. Trailmobile failed to do so on a timely basis. Trailmobile cannot now be heard to complain when its own failure to promptly obtain discovery from Milwaukee Cylinder created a delay in learning of the Estoppel Certificate. Under the circumstances we do not find it just to impose liability on the successor corporation. *Dawejko, supra.*

We affirm the order of the Court of Common Pleas of Delaware County.

Order affirmed.