# Continental Ins. Co. v. Schneider Inc.

C.P. of Allegheny County, no. GD92-9392.

*Joseph S.D. Christoff II,* for plaintiff.
*Anthony M. Mariani,* for defendants Schneider.
*Manning J. O'Connor II,* for defendants Vanadium.

WETTICK, *J.,* April 15, 1999—The subject of this opinion and order of court is a motion for summary judgment filed on behalf of defendants Vanadium Enterprises Corporation, S.E. Technologies Inc., S.S.I. Services Inc., Jones Krall Inc. and Construction Rental and Supply Inc. (collectively referred to as Vanadium). The issue raised through Vanadium's motion is whether a general creditor[1] of a defunct entity may pursue its claim based on successor liability against a new entity that purchased the ongoing business of the defunct entity from a secured creditor of the defunct entity.

From 1984 through 1990, Continental Insurance Company was the insurance carrier which provided general liability, automobile and workers' compensation insurance for as many as 40 companies or divisions which were owned and controlled by Frank S. Schneider (Schneider Companies). Continental continues to pay claims and defend suits for occurrences which took place during the period of the insurance coverage. Under the agreements between the Schneider Companies and Continental, the Schneider Companies are obligated to pay additional premiums, adjusted retrospectively, based on losses incurred and claims paid. Continental contends that it is currently owed more than $12 million in retrospective premiums.

---

1. In this opinion, I am using the term "general creditor" to refer to any unsecured creditor whose claims are not part of any public policy exception to the general rule against successor liability. See footnote 3 of this opinion; also see discussion at pages 432-33 of this opinion.

During the middle and latter part of the 1980s, the Schneider Companies began to suffer serious financial losses. As of December 31, 1987, a significant number of the 40 Schneider Companies had concluded all business activities except for the completion of existing projects. As of early 1989, the Schneider Companies owed more than $35 million to the three major Pittsburgh banks: Pittsburgh National Bank (now PNC Bank), Mellon Bank, and Equitable Bank (now National City). The banks held blanket security interests in virtually all of the assets of the Schneider Companies. They also had mortgages in various parcels of real estate.

Even though the banks had the right to immediately dispose of collateral of the Schneider Companies, on April 3, 1989, the banks and Schneider Companies executed a standstill agreement. The agreement maintained the banks' lien positions while permitting the Schneider Companies to operate until an overall strategy was developed for an appropriate disposition of the collateral. During this period, some of the Schneider Companies' entities continued to do business under the controls imposed by the banks; some ceased operations; and others were sold.

Under the facts most favorable to Continental, as of April 1990, Schneider Consulting Engineers, S.S.I. Services Inc., Jones Krall Inc., and Construction Rental and Supply Inc. were the only Schneider Companies which were conducting any business and making any money for the Schneider Companies. After May 1990, none of the remaining Schneider Companies was anything other than an empty shell.

In early 1990, Schneider voluntarily delivered the non-real estate assets of these remaining Schneider Companies to the banks. The banks then sold these assets to a corporation (Vanadium) owned and operated by the per-

sons who had been managing the ongoing Schneider businesses.

The purchase price for the assets was less than $15 million. The banks were owed approximately $35 million. Vanadium did not assume any of the Schneider Companies' obligations to the banks. Thus, the banks will never recover most of the debt.

The purchase agreements between the banks and Vanadium provides that Vanadium is not assuming any obligations or liabilities except those which it agreed to assume. The Continental debt is not a liability that it agreed to assume.

This was a prearranged transaction. There was not any interruption in the business operations of the ongoing businesses. They were ongoing businesses operated by the Schneider Companies prior to the banks' sale of the assets of the Schneider Companies to Vanadium. Immediately following their sale, Vanadium operated the same businesses at the same locations with the same employees. These ongoing businesses provide services. Consequently, these businesses would have had limited value without a continuity of management, employees, locations and customers.

There is a factual dispute as to whether there is continuity of ownership and control. Prior to the consensual foreclosure and sale, Frank S. Schneider was the sole shareholder and chief operating officer of the Schneider Companies. Frank S. Schneider is not a shareholder of the corporation (Vanadium) that acquired the assets from the banks.

Continental contends that it can establish that Frank S. Schneider has continued to participate in the operations of the businesses. Furthermore, he should be characterized as an owner because of the role that he and his son played in the management group's acquisition of the assets of the ongoing businesses.

It is Continental's position that Frank S. Schneider and his wife loaned approximately $2 million to their son (a straw party) that was transferred to Capital Diverse Venture Corporation, a corporation nominally owned by the son. Capital furnished the $2 million to Vanadium in order for Vanadium to purchase the assets from the banks. Through this investment, the son acquired preferred stock in Vanadium that could be converted into common stock. When converted, the son would own 70 percent of the Vanadium stock. Furthermore, the $2 million loan from Mr. and Mrs. Schneider to their son is secured by the common stock of Capital. This evidence, according to Continental, will support a finding that the new entity was owned and controlled by the same person who owned and controlled the old entity.[2]

Continental contends that it may pursue a claim for successor liability under established Pennsylvania case law governing the liability of a successor company for the commercial debts of a company that previously operated the same business. The Pennsylvania case law upon which Continental relies refers to the situation in which one company sells or transfers all of its assets to another company. In that situation, the purchasing company is not responsible for the debts and liabilities of the selling company simply because it acquired the seller's property. In order to hold the acquiring company responsible for the seller's liabilities, one of the following must be established: "(1) the purchaser expressly or impliedly agreed to assume the obligations; (2) the transaction amounted to a consolidation or merger; (3) the purchasing corporation was merely a continuation of the selling

2. While Vanadium denies that Mr. Schneider exercises any control over its operations, for purposes of its motion for summary judgment, I must assume that Continental can establish common ownership and control.

corporation; (4) the transaction was fraudulently entered into to escape liability; and (5) the transfer was without adequate consideration and no provisions were made for the creditors of the selling corporation." See *Hill v. Trailmobile Inc.,* 412 Pa. Super. 320, 326, 603 A.2d 602, 605 (1992); *Simmers v. American Cyanamid Corp.,* 394 Pa. Super. 464, 482, 576 A.2d 376, 386 (1990).[3]

Continental contends that it is entitled to pursue a claim for successor liability under several of these exceptions to the general rule against successor liability. It contends that Vanadium is merely a continuation of Schneider (exception 3),[4] that the transaction was fraudulently entered into so that Vanadium could escape liability for debts of the debtor corporation (exception 4), and that the transfer was without adequate consideration with no provisions made for creditors of the selling corporation (exception 5).

Exception 5—transfers for inadequate consideration without provision being made for creditors of the selling corporation—is inapplicable. The purpose of this exception is to prevent parties from entering into transactions that would deprive the general creditors of assets that may otherwise have been available to these general credi-

3. Pennsylvania also has a product line exception to successor liability which provides that when one corporation acquires all or substantially all of the manufacturing assets of another corporation, and undertakes essentially the same manufacturing operations as the selling corporation, the purchasing corporation is strictly liable for injuries caused by defects in units of the same product line, even if previously manufactured or distributed by the selling corporation or its predecessor. *Hill v. Trailmobile Inc., supra,* 412 Pa. Super. at 327, 603 A.2d at 606; *Simmers v. American Cyanamid Corp.,* 394 Pa. Super. at 482, 576 A.2d at 386; *Dawejko v. Jorgensen Steel Co.,* 290 Pa. Super. 15, 23, 434 A.2d 106, 110 (1981).

4. The concepts of a de facto merger (exception 2) and continuation are interrelated as discussed by plaintiff in its brief in opposition to the Vanadium defendants' motion for summary judgment at 27.

tors. In this case, the money which the Schneider Companies owed to its secured creditors was far in excess of the value of the assets of the Schneider Companies. The law does not impose upon a secured creditor the obligation to make assets subject to a security interest available to the general creditors where the secured creditor's debt cannot be satisfied.

Also, Continental cannot establish that the transfer was without adequate consideration. Under the Uniform Commercial Code (13 Pa.C.S. §9503(a)), the banks were entitled to take possession of the collateral without judicial process.[5] Under the Uniform Commercial Code (13 Pa.C.S. §9504), a secured party is required only to dispose of the collateral in a commercially reasonable manner; it may dispose of the collateral by public or private sale. Continental does not cite evidence that would support a finding that the banks failed to proceed in a commercially reasonable manner. In this case in which the banks' obligations would never be satisfied, the banks had every incentive to obtain the best price for the Schneider assets.

Continental may not pursue a successor liability claim under the fourth exception—the transaction was fraudulently entered into to escape liability. Continental correctly states that the banks and Vanadium structured the transaction in a fashion that was designed to prevent general creditors of the Schneider Companies from bringing claims against Vanadium. The claims of these general creditors exceeded the amount that the banks could

---

5. Under 13 Pa.C.S. §9503(a), a secured party may proceed without judicial process if this can be done without breach of the peace. If the security agreement so provides, the secured party may require the debtor to assemble the collateral and to make it available to the secured party. Consequently, the code provides for a consensual foreclosure.

obtain from the sale of the assets of the Schneider Companies. Consequently, unless the transaction was structured to prevent general creditors of the Schneider Companies from bringing claims against Vanadium by virtue of its acquisition of the assets of the Schneider Companies, Vanadium would not have purchased the assets.

This fourth exception covers only a transaction that was "fraudulently entered into." Under established Pennsylvania creditor law, a secured creditor is entitled to structure the sale of the assets in which it holds a security interest in a manner that will maximize the sales price in the situation in which the value of the assets is significantly less than the amount of the debt which the assets secure. Fraud cannot be established without a showing that the secured party has structured the transaction to provide protections against claims of general creditors that may not be necessary to protect the secured party's interests.[6]

I next consider the third exception—the purchasing corporation was merely a continuation of the selling corporation.

If Vanadium had obtained the assets directly from the Schneider Companies, this exception would apply (assuming that Continental can establish continuity of ownership and control). However, in this case, the banks—rather than Schneider—were the selling entities. Obvi-

6. For example, Continental might be able to establish fraud in the following instances: (1) if the purchase agreement for the assets had provided for Vanadium to make an immediate payment of $5 million to the banks and to make subsequent payments of $30 million in equal monthly installments over the next five years (see *e.g., Fiber-Lite Corporation v. Molded Acoustical Products of Easton Inc.,* 186 B.R. 603 (E.D. Pa. 1994) or (2) if the banks had been paid cash of $33 million for the Schneider assets (see *e.g., Kaiser Foundation Health Plan of the Mid-Atlantic States v. Clary and Moore P.C.,* 23 F.3d 201 (4th Cir. 1997)).

ously, the purchasing corporation is not a continuation of the selling banks. Consequently, if I literally read this exception, it is inapplicable.

However, the successor liability rule evolved in response to successor liability claims raised on behalf of a creditor of a selling corporation. The parties have not cited and I am not aware of any Pennsylvania appellate court cases in which the entity challenging a successor corporation claim acquired the assets from a secured creditor. Consequently, the Pennsylvania appellate courts have never considered whether the continuation exception should apply where the buying corporation acquired the assets from a secured creditor of the selling corporation rather than from the selling corporation.

If the Schneider Companies had transferred their assets to another corporation which Mr. Schneider owned and controlled, successor liability would attach because the law will not permit a business entity to unilaterally discharge its debts by forming a new corporation. Different considerations come into play where the new corporate entity acquired the assets from a secured creditor of the defunct entity. The law creates a sequence of priorities that entitles lienholders to reimbursement from a debtor's assets before general creditors may be paid. If the assets subject to security interests or other liens are insufficient to satisfy the debtor's obligations to its lienholders, the law places the interests of the lienholders ahead of the interests of the general creditors of a defunct corporation. Exceptions to the general rule against successor liability that would protect the interests of general creditors at the expense of a secured creditor would be inconsistent with the principles of creditor law which protect lienholders vis-a-vis general creditors.

I recognize that Continental is not claiming that it is entitled to liens on the assets which Vanadium acquired

through its purchase agreements with the banks. I also recognize that the Uniform Commercial Code does not contain any language discussing the impact of a secured creditor's sale of the debtor's assets on the ability of a general creditor of the debtor to pursue successor liability claims against the purchaser. However, any case law based on the common law that permits successor liability where there is a good faith sale is inconsistent with the statutory scheme of the Uniform Commercial Code for the regulation of security interests in personal property which protects a secured party vis-a-vis other creditors.

Creditors with security interests or other liens covering the assets of ongoing businesses that cannot pay their debts have three options: (1) they can sell the assets to entities that do not intend to continue to operate the ongoing businesses; (2) they can sell the assets to an entity with different ownership and management that will continue to operate the ongoing businesses; or (3) they can sell the assets to a new entity created for the purpose of continuing the business operations of the debtor entity that is composed of the persons who owned and operated the debtor entity. Where, as in the present case, the ongoing business is a service provider, the first option will seldom permit the secured creditor to obtain the best price for the assets. In many instances, the managers and owners of an existing business are the most optimistic about the business's future. Furthermore, although the corporate entity is insolvent, these individuals may have the ability to raise capital. Consequently, in many instances a sale to a new corporation created by management of the debtor corporation will produce the best price for the assets. In the absence of any competing public policies, the case law governing successor liability should not interfere with the interests of a secured creditor in

selling the secured assets to the buyer who will pay the most.[7]

In deciding Vanadium's motion for summary judgment, I will assume that Continental can establish the following: (1) the transaction resulted in a continuation of the viable Schneider enterprises—there was continuity of management, personnel, physical location, assets and general business operations; (2) although this is disputed, I assume that there was a continuity of ownership; (3) the Schneider Companies ceased business operations as of the date that the assets were transferred to the bank; (4) the Vanadium defendants assumed only those obligations of the Schneider Companies necessary for the uninterrupted continuation of the normal business operations of the Schneider Companies.

Also, I accept Continental's characterization of the transaction:

"The true intent of the transaction between the Vanadium defendants, the Schneider group and the banks was to insure that the banks received the maximum payment on the debts owed to them . . . and allow the only viable Schneider entities to start anew with a clean slate under the Vanadium enterprise. This restructuring was to be done so as to avoid the debts of other creditors, including Continental. As the report of Professor Warren makes clear, the nature of the transaction between the Schneider Companies, the banks and the Vanadium defendants 'accomplish, in substance, the continuation of the Schneider enterprise for a new corporate group under modified corporate names and controlled by Schneider and his affiliates.' (Warren report p. 4, exhibit 10.)" Brief in oppo-

---

7. Also, public policy favors the continuation of employment and other economic benefits to a community that result from the continuation of a business.

sition to the Vanadium defendants' motion for summary judgment at 26-27. (citation omitted)

Continental contends that its position that the continuation exception applies where the new company purchases the assets from a secured creditor is supported by *Bostick v. Schall's Brakes and Repairs Inc.,* 1999 Pa. Super. 23, 1999 WL 38978 (Pa. Super. Feb. 1, 1999). In *Bostick,* the plaintiffs filed wrongful death and survival actions against Schall's Sales and Services Inc. (Schall 1). While post-trial motions that Schall 1 filed following a jury verdict in the plaintiffs' favor were pending, Schall 1 filed for Chapter 7 bankruptcy and the bankruptcy court issued an order discharging Schall 1's debt.[8] On the basis of this order, the trial court discontinued plaintiffs' lawsuits against Schall 1.

After the Schall 1 verdict and prior to the court's discontinuance of the Schall 1 actions, the plaintiffs filed a lawsuit against Schall Brakes and Repairs Inc. (Schall 2). In their complaint, they alleged that Schall 1 fraudulently transferred its assets to Schall 2 prior to its declaration of bankruptcy and that Schall 2 was the alter ego/successor corporation of Schall 1 and, thus, liable for its debts.

The trial court granted Schall 2's motion for summary judgment in the Schall 2 lawsuit on the ground that the plaintiffs failed to appeal the order discontinuing the Schall 1 cases and a court cannot revive a claim that has been discharged in bankruptcy. The Superior Court reversed. It cited the exceptions to the successor liability rule (1) where the purchasing corporation is merely a

---

8. The discharge exceeded the scope of the bankruptcy court's authority. Partnerships and corporations may not discharge their debts in a liquidation proceeding under Chapter 7. See *National Labor Relations Board v. Better Building Supply Corp.,* 837 F.2d 377, 378 (9th Cir. 1988); *Bostick, supra,* 1999 WL 38980 at *3.

continuation of the selling corporation and (2) where the transaction is entered into to escape the selling corporation's liability.

*Bostick* can be readily distinguished from the present case because in *Bostick,* the plaintiffs alleged that Schall 1 fraudulently transferred its assets to Schall 2 prior to its declaration of bankruptcy. Thus, this is not a case in which Schall 2 purchased the assets from the trustee in bankruptcy. Consequently, this case is governed by the case law involving a transfer directly from the "selling corporation" to the "buying corporation."

The *Bostick* opinion is broadly written. The opinion relies on *Chicago Truck Drivers, Helpers and Warehouse Workers Union Pension Fund v. Tasemkin Inc.,* 59 F.3d 48 (7th Cir. 1995), which involved the following fact situation: Old Tasemkin was insolvent; it owed more than $300,000 to a pension fund. The fund was unable to recover in Chapter 7 liquidation proceedings because Old Tasemkin had entered into a debt compromise agreement with its secured lender; the secured lender turned the interest over to New Tasemkin; and New Tasemkin foreclosed on the collateral.

New Tasemkin operated the same business, employed the same staff, relied on the same suppliers, and was owned by members of the same family that owned Old Tasemkin. The pension fund sued New Tasemkin under the theory of successor liability.

The district judge dismissed the lawsuit on the ground that a ruling allowing the fund which lost out in bankruptcy court to proceed against New Tasemkin on a successor liability theory would frustrate the primacy of the Bankruptcy Code. The court of appeals rejected this argument, stating that it is not clear why an intervening bankruptcy proceeding should have a per se preclusive effect on a creditor's claim based on successor liability.

In this case, however, the Seventh Circuit did not apply the standard exceptions to the general rule against successor liability. Instead, it applied a broader successor liability standard developed to protect federal rights or to effectuate federal policy which allows lawsuits against "even a genuinely distinct purchaser of a business" if (1) the successor had notice of the claim before the acquisition, and (2) there was substantial continuity in the operation of the business before and after the sale. *Id.* at 49.[9]

Even assuming that the *Chicago Truck Drivers* opinion is part of Pennsylvania case law as a result of the *Bostick* opinion's reliance on this Seventh Circuit ruling, this opinion does not offer any guidance for the present case. The present case does not involve any federal or state public policies which compete with the lien priority scheme of state law. Consequently, the Seventh Circuit's use of broad successor liability standards to protect federal rights and to effect federal policy has no applicability to the present case.

In its brief, Continental also cites several other federal court rulings that, according to Continental, support its position. With one exception, they do not support its position.

---

9. In the following cases, the Court of Appeals for the Seventh Circuit has ruled that successor liability may apply against even a genuinely distinct purchaser where the creditor's claims are based on a violation of federal rights: *Equal Employment Opportunity Commission v. G-K-G Inc.,* 39 F.3d 740 (7th Cir. 1994) (suit brought under the Age Discrimination in Employment Act); *Upholsters' International Union Pension Fund v. Artistic Furniture of Pontiac,* 920 F.2d 1323 (7th Cir. 1990) (recovery of delinquent pension fund contributions governed by congressional pension legislation); *Wheeler v. Snyder Buick Inc.,* 794 F.2d 1228 (7th Cir. 1986) (title VII violation); and *EEOC v. Vuciteck,* 842 F.2d 936 (7th Cir. 1988) (Pregnancy Discrimination Act).

*Today's Child Learning Center Inc. v. United States,* 1998-1 Stand. Fed. Tax Rep. (CCH) ¶50, 252 at 83, 508 (E.D. Pa. 1998), is inapplicable because in that case there was no intervening creditor.

In *Kaiser Foundation Health Plan of the Mid-Atlantic States v. Clary & Moore P.C.,* 123 F.3d 201 (4th Cir. 1997), the plaintiffs sued Clary & Moore (Law Firm 2) to obtain payment of a judgment obtained against Clary, Lawrence (Law Firm 1). The court found successor liability based on a finding that Law Firm 2 was a mere continuation of Law Firm 1. While Law Firm 2 purchased assets of Law Firm 1 at a foreclosure sale, Law Firm 1 also directly transferred other assets to Law Firm 2 and the court found that various transactions between the law firms were not arm's length transactions for consideration. Furthermore, it was significant to the court that the amount which Law Firm 2 paid was just enough to cover the outstanding debt of the secured creditor while not leaving anything for the plaintiff's judgment. Consequently, this case comes within the exceptions to the general rule against successor liability governing transactions fraudulently entered into to escape liability, transfers without adequate consideration where no provision is made for creditors of the transferring corporation and transactions directly between the debtor corporation and the new corporation.

In *Fiber-Lite v. Molded Acoustical Products of Easton Inc., supra,* 186 B.R. 603, the plaintiffs sued Molded Acoustical Products of Easton Inc. to obtain payment of money that Molded Acoustical Products of Indiana Inc. owed the plaintiff. The plaintiff contended that Easton was merely a continuation of Indiana and therefore, liable for its obligations and debts as Indiana's successor.

Easton had purchased Indiana's assets from a bank at a foreclosure sale. In its initial ruling, the court entered a

judgment in Easton's favor. It ruled that Easton took Indiana's assets free and clear of the indebtedness due to the plaintiff:

"We further noted that Fiber-Lite did not offer any proof that Easton did not act in good faith or that the bank colluded with Easton or otherwise acted in a commercially unreasonable manner. In the absence of such proof, we found that we had no choice but to believe that Easton was the most commercially reasonable buyer." *Id.* at 609.

Upon reconsideration, the court ruled that Easton could be responsible for Indiana's debts because the evidence showed that the bank had simply transferred Indiana's assets to Easton in exchange for Easton's agreement to pay Indiana's outstanding obligations to the bank. Consequently, the court concluded, "we find section 9-504 not to be applicable to the facts of this case." *Id.* at 610.

In *Ross Controls Inc. v. United States Department of the Treasury,* 160 B.R. 527 (E.D. Pa. 1993), the owner of the old company closed the old company's doors and five days later began operating the same business under a different name at a new location. The only involvement of a lienholder occurred months later when the IRS auctioned certain items owned by the old company and "purchased" by the new company for $112,000 of which only $1,000 was actually paid. Consequently, this case is governed by the case law imposing successor liability where a debtor seeks to unilaterally discharge its debts by conducting its business under a different name and the transfer was without adequate consideration.

*Glynwed Inc. v. Plastimatic Inc.,* 869 F. Supp. 265 (D.N.J. 1994), does support Continental's position. The case involved commercial debt; the new corporation acquired the assets pursuant to a valid foreclosure sale un-

der section 9-504 of the Uniform Commercial Code. The secured creditor apparently obtained the best possible price for the assets. The court framed the issue as follows: Whether a bank's sale of collateral under a secured agreement pursuant to section 9-504 permits the purchaser not only to take the assets free of any security interest in the collateral but also precludes any claim of successor liability being asserted against the purchasing corporation. The court concluded that:

"Despite Danko/Plastock's predictions of the gloom and doom that will descend upon the area of commercial law if the court permits Glynwed to proceed on its theory, nothing in the UCC supports Danko/Plastock's argument that the 9-504 sale provides a safe harbor against successor liability claims. Glynwed is not looking to enforce a lien on the assets that Danko/Plastock purchased at the foreclosure sale, but is asserting a claim of successor liability. Contrary to Danko/Plastock's assertions, this is a distinction with a difference." *Id.* at 273-74.

I do not find this opinion to be persuasive. The court never offers an explanation for its decision to extend principles of successor liability to the situation in which the seller is a secured creditor rather than the party owing the debt.

Unlike the situation before this court, almost all of the case law governing successor liability for the claims of general creditors of the debtor entity involves an entity with new ownership which purchased the assets of the debtor entity from a secured creditor. In cases in which there is only a continuity of the enterprise (as opposed to a continuity of ownership), the courts hold that successor liability will not apply without a showing of inadequate consideration and the absence of good faith. See *Ed Peters Jewelry Co. v. C&J Jewelry Co. Inc.,* 124 F.3d

252 (1st Cir. 1997); *Gallenberg Equipment Inc. v. Agromatic International Inc.,* 10 F. Supp.2d 1050 (E.D. Wisc. 1998); *Academy of IRM v. LVI Environmental Services Inc.,* 687 A.2d 669 (Md. 1997); *G.P. Publications Inc. v. Quebecor Printing-St. Paul Inc.,* 481 S.E.2d 674 (N.C. Ct. App. 1997); *Welco Industries Inc. v. Applied Companies,* 617 N.E.2d 1129 (Ohio 1993); and *Uni-Com Northwest Ltd. v. Argus Publishing Co.,* 737 P.2d 304 (Wash. Ct. App. 1987).

In summary, the case law involves either rulings that do not apply the continuity exception to successor liability where there is only a continuity of the enterprise or rulings applying the continuity exception where an entity seeks to discharge its debts simply by changing the name of the shell in which it conducts its business operations. Neither line of cases answers the question of whether the continuity exception applies where a new entity with common ownership and control purchases the assets of the debtor entity from a secured debtor. In this case of first impression, I am ruling that the continuity exception does not apply because successor liability would be inconsistent with legislative public policy giving preference to the interests of secured creditors over the interests of general creditors.

## ORDER

On April 15, 1999, it is hereby ordered that the motion for summary judgment filed on behalf of Vanadium Enterprises Corporation, S.E. Technologies Inc., S.S.I. Services Inc., Jones Krall Inc., and Construction Rental and Supply Inc. is granted, and plaintiff's complaint is dismissed as to these defendants.

Status conference will be held on April 29, 1999 at 2 p.m. o'clock.