## FIZZANO BROTHERS CONCRETE PRODUCTS, INC.

v.

## XLN, INC., Successor In Interest to System Development Group, Inc.

v.

## Shore Consultants, Ltd., Gregg A. Montgomery, David Binder and XLNT Software Solutions, Inc.

### Appeal of XLNT Software Solutions, Inc.

Superior Court of Pennsylvania.

Argued Sept. 16, 2008.

Filed May 15, 2009.

John H. May, Lancaster, for appellant.

Paul A. Bucco, Conshohocken, for appellee.

BEFORE: BENDER, DONOHUE and FREEDBERG, JJ.

OPINION BY DONOHUE, J.:

¶ 1 XLNT Software Solutions, Inc. ("XLNT") appeals from the trial court's entry of judgment in favor of Appellee Fizzano Brothers Concrete Products, Inc. ("Fizzano"). The trial court applied the *de facto* merger doctrine to impose successor liability on XLNT for the debts of a company whose assets XLNT purchased. In so ruling, the trial court excepted this asset sale from the general rule that the purchaser of assets is not liable for the debts of the transferor. Since we conclude that the record in this case does not support a finding that the *de facto* merger doctrine had any application in this case, we reverse the trial court's order.

¶ 2 In 1991, System Development Group, Inc. ("SDG"), a Pennsylvania corporation owned by Daniel Fritsch ("Fritsch"), Michael Hamlin ("Hamlin"), Phillip Theis and Paul Stehlik, acquired the rights to develop, license and sell "XLN Enterprise Management" accounting and manufacturing software (the "Software"). Notes of Testimony ("N.T."), 10/23/06, at 39–40. In 1999, Fizzano entered into a written contract with SDG whereby SDG agreed to license the Software for use in Fizzano's business. N.T., 10/24/06, at 43.

¶ 3 In April 1999, David Binder ("Binder") and five associates incorporated XLN, Inc. ("XLN") for the purpose of acquiring SDG and the Software. *Id.* at 79. Pursuant to a stock purchase agreement dated April 19, 2000, SDG agreed to sell and transfer all of its stock and assets to XLN. Defendants' Exhibit 1. In the agreement, XLN was granted a license to develop and market the Software, but ownership of its source code remained in the hands of the former shareholders of SDG until XLN paid the full purchase price. *Id.* XLN hired Hamlin and Fritsch as employees.

¶ 4 On October 25, 2001, Fizzano filed suit against XLN for breach of contract.

Paragraph 3 of Plaintiff's Complaint alleged "XLN, upon information and belief acquired System Development Group, Inc. (hereinafter "System") in June 2000, thereby becoming its successor in interest for purposes of this litigation."

¶ 5 In the third or fourth quarter of 2002, XLN began to experience financial difficulties. *Id.* at 81–82. Hamlin and Fritsch were both terminated and Binder began efforts to sell the company and/or its assets. Defendants' Exhibit 8. To this end, Binder approached Gregg A. Montgomery ("Montgomery") and Richard Alexander ("Alexander"). In August 2003, Montgomery and Alexander incorporated XLNT and entered into an Asset Purchase Agreement with XLN for $270,000 in cash. Plaintiff's Exhibit 1. Pursuant to the Asset Purchase Agreement, XLN sold most of its assets to XLNT but retained a copy of a derivative version of the Software (called T–Rex) along with two of its customers, several computer workstations and servers, and various intellectual property rights. *Id.* In the Asset Purchase Agreement, XLNT disclaimed all liabilities of XLN other than, *inter alia*, its existing obligations for remediation of problems with a particular customer, Cardinal IG. *Id.*

¶ 6 In July 2004, Fizzano filed a motion to amend its complaint, which the trial court granted in August 2004. In September 2004, Fizzano filed an amended complaint, adding XLNT (among others) as additional defendants. In September 2006, Fizzano filed a motion for summary judgment against XLN. After XLN failed to respond, the trial court entered judgment in the amount of $114,105 plus attorneys fees against XLN. After a bench trial in October 2006, the trial court entered a verdict against XLNT in the amount of $114,000. In June 2007, the

trial court denied XLNT's post-trial motions.

■ ¶ 7 This appeal followed, in which XLNT challenges the trial court's application of the *de facto* merger doctrine to impose successor liability on XLNT in this case.[1] The general rule under Pennsylvania law for corporate sale of assets transactions is as follows: when one company sells all or substantially all of its assets to another company, the latter company is not responsible for the debts of the transferor simply because it acquired the transferor's property. *Continental Ins. Co. v. Schneider, Inc.*, 582 Pa. 591, 599, 873 A.2d 1286, 1291 (2005) (citing *Hill v. Trailmobile, Inc.*, 412 Pa.Super. 320, 603 A.2d 602, 605 (1992)); *see also* 15 William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 7122 (perm.ed., rev.vol.2004).

■ ¶ 8 This general rule of non-liability can be overcome if any of five exceptions is established: (1) the purchaser expressly or implicitly agreed to assume liability; (2) the transaction amounted to a consolidation or *de facto* merger; (3) the purchasing corporation was merely a continuation of the selling corporation; (4) the transaction was fraudulently entered into to escape liability; or (5) the transfer was without adequate consideration and no provisions were made for creditors of the selling corporation. *Schneider*, 582 Pa. at 599–600, 873 A.2d at 1291; *Hill*, 603 A.2d at 605; Fletcher, *supra*, at § 7122.

¶ 9 The second of these exceptions,[2] the *de facto* merger doctrine, proceeds from the basic equitable principle that an entity should not be permitted to escape its obligations to others through sham corporate reorganizations. As this Court has recognized, "where the successor corporation has been established to merely 'continue' the former corporation's operations or to escape the former corporation's liability, our courts have imposed 'successor corporation liability'." *Bostick v. Schall's Brakes and Repairs, Inc.*, 725 A.2d 1232, 1237 (Pa.Super.1999). Or described more generally:

> The exception is designed to prevent a situation whereby the specific purpose of acquiring assets is to place those assets out of reach of the predecessor's credi-

---

**1.** Our standard of review in appeals from non-jury trials is to determine whether the findings of the trial court are supported by competent evidence and whether the trial judge committed error in the application of law. *Stonehedge Square Ltd. Partnership v. Movie Merchants, Inc.*, 454 Pa.Super. 468, 685 A.2d 1019, 1022 (1996), *affirmed*, 552 Pa. 412, 715 A.2d 1082 (1998).

Given this standard of review, we are somewhat perplexed by the dissent's contention that we reviewed the evidence and made "findings inconsistent with those determined by the court below." Dissenting Opinion at 1024. The issue squarely presented in this appeal by XLNT is whether the trial court appropriately applied the four factor test for *de facto* mergers based upon the evidence presented at trial. Based upon our exhaustive review of the record, we have determined that certain of the trial court's findings of fact with respect to the four factors are supported

by the record, *e.g.*, the lack of continuity of ownership, continuity of general business operations, and not supported by the record in other respects, *e.g.*, continuity of management.

**2.** In its analysis, the trial court also made reference to the third exception, the continuation rule, as a basis for its decision. Trial Court Opinion, 11/7/07, at 15. The continuation rule provides for successor liability when there is a "common identity of officers, directors and stock between the selling and purchasing corporations, and only one corporation after the transfer." *Dawejko v. Jorgensen Steel Co.*, 290 Pa.Super. 15, 434 A.2d 106, 108 (1981). This exception could not possibly apply in the present case, however, since there is no common identity of officers, directors, or stock ownership between XLN and XLNT, and both entities remain in existence.

tors. In other words, the purchasing corporation maintains the same or similar management and ownership, but wears a 'new hat.' To allow the predecessor to escape liability by merely changing hats would amount to fraud. Thus, the underlying theory of the exception is that, if a corporation goes through a mere change in form without a significant change in substance, it should not be allowed to escape liability. Fletcher, *supra*, § 7124.10.

¶ 10 A merger occurs when a seller corporation, including all of its assets and liabilities, is absorbed into a purchasing corporation and the seller loses its identity as a separate entity. *Seven Springs Farm, Inc. v. Croker*, 748 A.2d 740, 747 n. 4 (Pa.Super.2000) (citing McLamb, Jr. and Shiber, *Pennsylvania Corporate Law and Practice* § 9.3[b]); *Commonwealth v. Lavelle*, 382 Pa.Super. 356, 555 A.2d 218, 228–29 (citing 15 P.S. § 1907), *appeal denied*, 524 Pa. 595, 568 A.2d 1246 (1989). Under the *de facto* merger doctrine, when a transaction cast as an acquisition or sale of assets has the economic effect of a merger, a court may treat it as a merger for purposes of successor liability even if it does not meet the statutory requirements for a merger. *See Dawejko*, 434 A.2d at 108 (holding that courts should not "elevate form over substance" in determining whether a successor should be liable).

¶ 11 In determining if a *de facto* merger has occurred, Pennsylvania courts consider four factors: (1) continuity of ownership; (2) cessation of the ordinary business by, and dissolution of, the predecessor as soon as practicable; (3) assumption by the successor of liabilities ordinarily necessary for uninterrupted continuation of the business; and (4) continuity of the management, personnel, physical location, and the general business operation. *Continental Ins. Co. v. Schneider, Inc.*, 810 A.2d 127, 135 (Pa.Super.2002), *affirmed*, 582 Pa. 591, 873 A.2d 1286 (2005). The trial court in this case determined that Fizzano proved that three of these four factors existed with regard to the Asset Purchase Agreement between XLN and XLNT, and that this was sufficient to establish XLNT's successor liability. We find that the record does not support the trial court's findings that facts supporting three of the factors were established. Further, since there was no continuity of ownership, the *de facto* merger doctrine does not apply.

¶ 12 With regard to continuity of ownership, the trial court acknowledged that none of the owners of XLN became owners of XLNT. Trial Court Opinion, 11/7/07, at 17. This finding, by itself, should have ended the trial court's consideration of XLNT's potential successor liability. Continuity of ownership is a key element that must exist in order to apply the *de facto* merger doctrine, since in the absence of a transfer of stock for assets the consequence of the transaction is not the functional equivalent of a merger. Instead, where there is no continuity of ownership the transaction is merely an arms-length transaction between two corporations and not in any sense a merging of two corporations into one. As one federal court of appeals put it, without "continuity of shareholder interest, the two corporations are strangers, both before and after the sale." *Travis v. Harris Corp.*, 565 F.2d 443, 447 (7th Cir.1977); *see also Forrest v. Beloit Corp.*, 278 F.Supp.2d 471, 477 (E.D.Pa.2003) (*de facto* merger claim fails as a matter of law without stock transfer between predecessor and successor corporations), *reversed on other grounds*, 424 F.3d 344 (3d Cir.2005); *Pol Am Pack v. Redicon Corp.*, 2000 WL 1539079 at *3 (E.D.Pa., Oct.18, 2000) ("Of these four fac-

tors, the essential inquiry is whether the shareholders of the predecessor corporation become shareholders of the successor through the successor's use of stock in payment for the predecessor's assets."), *affirmed*, 281 F.3d 223 (3d Cir.2001); *Tracey v. Winchester Repeating Arms Co.*, 745 F.Supp. 1099, 1109–10 (E.D.Pa.1990) (continuity of ownership is "essential element" to *de facto* merger claim).[3]

¶ 13 The trial court found that this Court in *Schneider* ruled that continuity of ownership was not an essential element in a *de facto* merger claim. Trial Court Opinion, 11/7/07, at 20 (citing *Berg Chilling Systems, Inc. v. Hull Corp.*, 435 F.3d 455 (3d Cir.2006)). In *Schneider*, after setting forth the four factors in the analysis, we commented that "[a]lthough each of these factors is considered, all need not exist before a *de facto* merger will be deemed to have occurred." *Schneider*, 810 A.2d at 135. Contrary to the trial court's understanding of this statement, however, this Court did not intend to de-emphasize the importance of continuity of ownership as a key factor in a *de facto* merger analysis. In fact, our disposition in *Schneider* compels precisely the opposite conclusion, since in that case three of the four factors in the analysis were found to exist, with only the issue of continuity of ownership subject to remaining factual disputes. We concluded that so long as an issue of material fact remained with regard to continui-

---

**3.** Based upon policy considerations unique to the law of strict liability for defective products, in some products liability cases this Court has imposed successor liability in the absence of continuity of ownership under a "product line exception." This Court recently described the "product line exception" as follows:

> Where one corporation acquires all or substantially all the manufacturing assets of another corporation, even if exclusively for cash, and undertakes essentially the same manufacturing operation as the selling corporation, the purchasing corporation is strictly liable for injuries caused by defects in units of the same product line, even if previously manufactured and distributed by the selling corporation or its predecessor.

*Schmidt v. Boardman Co.*, 958 A.2d 498, 505 (Pa.Super.2008) (citing *Dawejko*, 434 A.2d at 110 (quoting and adopting the standard from *Ramirez v. Amsted*, 86 N.J. 332, 431 A.2d 811, 825 (1981))). In *Hill v. Trailmobile, Inc.*, 412 Pa.Super. 320, 603 A.2d 602 (1992), this Court held that the "product line exception" only applies when three factors are established:

> (1) the virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business, (2) the successor's ability to assume the original manufacturer's risk-spreading role, and (3) the fairness of requiring the successor to assume a responsibility for defective products that was a bur-

den necessarily attached to the original manufacturer's good will being enjoyed by the successor in the continued operation of the business.

*Id.* at 606 (adopting analysis in *Ray v. Alad Corp.*, 19 Cal.3d 22, 136 Cal.Rptr. 574, 560 P.2d 3 (1977)). As a result, this Court has made clear that its adoption of the "product line exception" constitutes "an attempt to implement the social policies underlying strict products liability." *Dawejko*, 434 A.2d at 111. The exception has never been applied outside the context of products liability law, and clearly has no application in the case sub judice—a breach of contract case.

Similarly, for policy reasons unique to the criminal context, in *Lavelle* this Court upheld a trial court's use of the *de facto* merger doctrine in the absence of continuity of ownership between the selling and acquiring corporations. In *Lavelle*, however, the sole owner of the selling corporation transferred the assets of his corporation to a new corporation owned and operated by his three children to "shelter the proceeds of his racketeering activities from the reach of the government." *Lavelle*, 555 A.2d at 229.

This Court further concluded that the evidence established that the owner of the selling corporation "assisted in the creation of [the acquiring corporation] and retained an undisclosed ownership interest in [the acquiring corporation] for the sole purpose of evading financial responsibility for his criminal acts." *Id.*

ty of ownership, summary judgment could not be granted on the *de facto* merger claim. *Id.* In reversing the trial court's grant of summary judgment in *Schneider*, we *emphasized*, rather than de-emphasized, the importance of continuity of ownership in the *de facto* merger analysis.

■ ¶ 14 With regard to the second factor, the cessation of the selling corporation's business after the transaction, the trial court found that this factor weighed in favor of successor liability because XLN is "currently dormant." Trial Court Opinion, 11/7/07, at 19. The record on appeal, however, does not reflect that either XLN or XLNT had any intention that XLN would cease operations and end its corporate existence as soon as legally and practically possible after the sale of assets. To the contrary, XLN not only remained in business after the sale (changing its name to XE Corporation) but also retained two customers (Genco Distribution Systems and Novartis Pharmaceutical Corp.), along with the physical and intellectual property assets necessary to service them (including computer equipment and the source code for the T–Rex derivative software). Plaintiff's Exhibit 1. Far from conveying any understanding by the parties that XLN would cease its business activities, the Asset Purchase Agreement even includes a covenant not to compete forbidding XLN from marketing its products to, *inter alia*, former SDG or XLN customers. *Id.*

■ ¶ 15 With respect to the third factor, assumption of liabilities ordinarily necessary for uninterrupted continuation of the business, the factual basis for this factor does not appear to have been extensively developed by either party. The trial court noted only that XLNT spent significant time and money to resolve issues with former XLN customer Cardinal IG. Trial Court Opinion, 11/7/07, at 19.[4] In the Asset Purchase Agreement, however, XLNT specifically assumed the obligation for remediation of problems with Cardinal IG while expressly disclaiming responsibility for XLN's other liabilities. *Id.*

¶ 16 The trial court's decision to impose successor liability in this case depended primarily on its findings with regard to the fourth factor, namely that "XLNT continued XLN's business operations through continuity of management, personnel, physical location, assets, and general business operations." Trial Court Opinion, 11/7/07, at 26. Again, however, the record on appeal does not support these findings, at least with regard to continuity of management. The record contains no information regarding the identities of the members of XLN's board of directors, and thus provides no basis for determining whether there was any overlap between the directors of XLN and XLNT. And other than Binder, identified as XLN's CEO, there is likewise no information in the record regarding the identity of the officers of XLN at the time of the sale of assets, and thus no basis for determining any connections between XLN officers and

4. In this regard, the trial court commented that it "cannot understand why XLNT did not attempt to remedy the problems with Fizzano, with whom it also had a contractual obligation." Trial Court Opinion, 11/7/07, at 19. It is not clear from the record on appeal why the trial court would think that XLNT had a contractual obligation to Fizzano. Fizzano initially entered into a contract with SDG, and the obligations under this contract were assumed by XLN in the stock purchase agreement with SDG. XLNT did not, however, assume any of the obligations under the Fizzano contract in the Asset Purchase Agreement. Plaintiff's Exhibit 1. Indeed, if XLNT had direct contractual obligations to Fizzano, application of the *de facto* merger doctrine to determine successor liability would not have been necessary in this case.

XLNT. After the sale, Binder had no continuing role at XLNT.

¶ 17 The trial court pointed out that two former employees of XLN, Hamlin and Fritsch, were hired by XLNT in connection with the sale of assets. At the time of the sale of assets, however, Hamlin and Fritsch were no longer employees of XLN, their employment having been terminated several months prior to the transaction. As such, XLNT's employment of Hamlin and Fritsch provides no support for a finding of a *continuation* of personnel. Moreover, while recognizing that Hamlin and Fritsch "had a direct part in the day-to-day operations of XLNT," the trial court also acknowledged that the evidence at trial demonstrated that neither of them had any "power to make legal and/or personnel decisions on XLNT's behalf."[5] Trial Court Opinion, 11/7/07, at 18. As a result, XLNT's employment of Hamlin and Fritsch, without more, did not establish a continuity of management and personnel required to support a *de facto* merger claim.

¶ 18 The record does support the trial court's finding with respect to continuity of general business operations. Pursuant to the Asset Purchase Agreement, XLNT purchased XLN's accounts receivable, customer lists, intellectual property (including the Software), name, and physical location.[6] Plaintiff's Exhibit 1; N.T., 10/23/06, at 68, 70, 91; N.T., 10/24/06, at 24, 35–36, 106, 114, 119, 179–80, 183. Continuity of general business operations, however, is hardly surprising after a sale of assets. In most instances, it is the entirely expected and appropriate consequence of such a transaction. As such, by itself it does not weigh strongly in favor of the imposition of successor liability. It is clearly outweighed in this case by the lack of continuity of ownership or management and by the continued corporate existence of XLN after the transaction.

¶ 19 Reversed.

¶ 20 BENDER, J. files a Dissenting Opinion.

## DISSENTING OPINION BY BENDER, J.:

¶ 1 Because I disagree with the Majority's interpretation of *Continental Ins. Co. v. Schneider, Inc.*, 810 A.2d 127 (Pa.Super.2002), *aff'd*, 582 Pa. 591, 873 A.2d 1286 (2005), and its impermissible fact finding, I respectfully dissent. In the context of successor liability, this Court in *Schneider* set forth the four factors to be considered when determining whether a *de facto* merger has occurred, and then stated "[a]lthough each of these factors is considered, all need not exist before a *de facto* merger will be deemed to have occurred." *Id.* at 135. I find nothing espoused in the *Schneider* opinion that would support the Majority's statement that "[c]ontinuity of ownership is a **key element that must exist** in order to apply the *de facto* merger doctrine...." Majority at 1020 (emphasis added). In fact, the Majority's interpretation of the *Schneider* decision appears to find support for its position and rely on the

---

5. Hamlin's title at XLNT was "Chief Operating Officer" and Fritsch's was "Chief Technology Officer". N.T., 10/23/06, at 99–102. Although these titles suggest they were both officers at XLNT, as noted above neither had any authority to make legal and/or personnel decisions on XLNT's behalf. Likewise, it is not clear that they held officer positions at XLN either, as their employment contracts with XLNT both provided that "Employee has no authority, either express or implied, to act on behalf of XLN in any matter without express written consent and permission from an officer of XLN." Defendants' Exhibits 13, 14.

6. XLNT assumed the lease for XLN's Lancaster facility and continued operations at that location. N.T., 10/23/06, at 68, 77.

remand for factual findings on the ownership issue. This remand did not occur because this Court wanted to "emphasize" the continuity of the ownership factor. Rather, the remand arose because of the context of the appeal. The trial court's grant of summary judgment in *Schneider* was found to be in error because there were outstanding issues of material fact. Here, this appeal came about after a bench trial took place resulting in the judgment in Fizzano Brother's favor and the denial of XLNT's request for judgment notwithstanding the verdict. In this case, the trial judge was the fact finder, but the Majority reviews the evidence and makes findings inconsistent with those determined by the court below. Because I would conclude that the trial court properly followed the dictates of *Schneider* and formulated findings of fact based on the evidence it heard, I would affirm the trial court's order in Fizzano Brother's favor.