873 A.2d 1286

CONTINENTAL INSURANCE COMPANY

v.

SCHNEIDER, INC.; Schneider Enterprises, Inc.; Vanadium Enterprises Corporation; S.E. Technologies, Inc.; Schneider Consulting Engineers; Schneider Technologies, Inc.; S.S.I. Services, Inc.; Jones Krall, Inc.; Construction Rental and Supply, Inc.; Energy Consultants, Inc.; Seventh Street Investment Assoc. 1982; Schneider Holding, Inc.; Industrial Art Services, Inc.; E.C. Planning & Management, Inc.; Schneider Baseball, Inc.; Schneider Outage Maintenance, Inc.; Schneider Management Co.; Schneider Energy Exploration, Inc.

Appeal of: Vanadium Enterprises Corporation, S.E. Technologies, Inc., S.S.I. Services, Inc., Jones Krall, Inc., Construction Rental and Supply, Inc.

Supreme Court of Pennsylvania.

Argued March 1, 2004.

Decided May 17, 2005.

Manning James O'Connor, II, Esq., Pittsburgh, for Vanadium Enterprises Corp., S.E. Technologies, Inc., et al.

Steven William Zoffer, Esq., Joseph S.D. Christof, II, Esq., Pittsburgh, for Continental Insurance Company.

Anthony Mark Mariani, Esq., Pittsburgh, for Schneider, Inc., et al.

BEFORE: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Justice NIGRO.

We granted allowance of appeal in this secured transactions case to determine whether the Superior Court erred in finding that a successor business entity could be held liable on a theory of successor liability to a general creditor of its predecessor entity, even though the successor purchased the predecessor's assets from the predecessor's secured creditors at foreclosure sale pursuant to the Pennsylvania Uniform Commercial Code (the "UCC"). For the following reasons, we hold that the Superior Court did not err and therefore affirm.

From 1984 through 1990, Appellee Continental Insurance Company ("Continental") provided general liability, automobile and workers' compensation insurance to approximately forty companies or divisions that were owned and controlled by Frank Schneider (the "Schneider Companies").[1] During the mid-to-late 1980s, the Schneider Companies fell upon severe financial difficulties, such that by 1989, they had accumulated $35 million in debt to their three secured creditors, Pittsburgh National Bank (now PNC Bank), Mellon Bank and Equitable Bank (now National City Bank) (collectively, the "Banks"), who held blanket security interests in virtually all of the assets of the companies. As a result, Schneider, in

---

1. This case has come to us by way of a ruling on a motion for summary judgment. Accordingly, we state the facts in the light most favorable to the non-moving party, which is Continental. *See, e.g., Jones v. SEPTA,* 565 Pa. 211, 772 A.2d 435, 438 (2001).

coordination with the Banks, began shutting down or selling off most of the Schneider Companies. By April of 1990, only four of the Schneider Companies were still conducting any business and after May of 1990, even those four were nothing more than empty shells.

Sometime in early 1990, Schneider delivered all of the non-real estate assets that were owned by the Schneider Companies to the Banks. The Banks then sold the assets for $15 million at a consensual private foreclosure sale, pursuant to section 9–504 of the UCC, 13 Pa.C.S. § 9504.[2] The purchaser of the assets was an entity named Vanadium Enterprises Corporation ("Vanadium"), which, according to Continental, is owned and operated by the same individuals who had owned and managed the Schneider Companies.

Thereafter, Continental, who was now an unsecured creditor of the Schneider Companies, instituted this action, seeking, *inter alia*, to impose joint and several successor liability on Vanadium, S.E. Technologies, Inc., Construction Rental and Supply, Inc., Jones Krall, Inc. and S.S.I. Services, Inc. (collectively, "the Vanadium Group"),[3] for $12 million in retrospective premiums that the entire family of Schneider Companies allegedly owed to Continental.[4] Ultimately, the Vanadium

---

**2.** Effective July 1, 2001, section 9–504 was amended and re-codified as UCC §§ 9–610, 9–611, 9–615, 9–617, 9–618, 13 Pa.C.S. §§ 9610–11, 9615, 9617–18. *See* Act of June 8, 2001, P.L. 123, No. 18, § 16. However, all of the relevant transactions in this case occurred prior to the recodification and the lower courts and parties have therefore relied exclusively on the version of the UCC in effect prior to the recodification. We will do the same.

**3.** According to Continental, Vanadium was designed as a holding company to hold the stock of the other four newly-incorporated defendant companies, which, in turn, continued the businesses of the four last-standing and very similarly-named Schneider Companies. *See* Amended Complaint, ¶¶ 43–69.

**4.** Under Continental's various insurance agreements with the Schneider Companies, the Schneider Companies were responsible for paying additional premiums, adjusted retrospectively, based on losses incurred and claims paid. As of the date of the trial court opinion in this case, Continental was still paying claims and defending suits for occurrences which took place during the years of coverage and according to Continental, the Schneider Companies owed it $12 million in retrospective premiums.

Group filed a motion for summary judgment, in which it asserted that it could not be liable to Continental as a matter of law, because purchasers of assets from a secured creditor of a debtor cannot be liable for the general obligations of the debtor. In the alternative, the Vanadium Group argued that none of the recognized exceptions to the general rule against successor liability were applicable here and thus, judgment should be entered in its favor.

In ruling on the Vanadium Group's motion, the trial court first agreed with the Vanadium Group that most of the exceptions to the general rule against successor liability were not applicable here,[5] but it refused to rule out the possibility that Continental could establish the factual predicate for the application of the exception for a successor who is a "mere continuation" of the predecessor entity,[6] stating that there was a "factual dispute as to whether there is a continuity of ownership and control" between the Schneider Companies and the Vanadium Group.[7] *Id.* at 3. Accordingly, the court went

Notably, Continental initially filed a complaint that included fraudulent conveyance and civil conspiracy counts against the Schneider Companies, Pittsburgh National Bank and the Vanadium Group. However, it subsequently amended its complaint and abandoned those claims.

5. Specifically, the trial court concluded that as a factual matter, Continental could not establish that the Vanadium Group was liable under the exceptions that permit liability to be imposed on successors who have obtained the predecessor's assets (1) through a transaction fraudulently entered into to avoid liability, or (2) for less than adequate compensation and without provision being made for creditors of the predecessor corporation. *See Continental Ins. Co. v. Schneider Inc.*, No. GD92–9392, C.C.P. Allegh. Cty, (Apr. 15, 1999), at 6–7 (citing *Hill v. Trailmobile*, 412 Pa.Super. 320, 603 A.2d 602, 605 (1992)). In addition, the trial court noted that Continental had not argued that the Vanadium Group was liable under the exception that applies when the purchaser expressly or impliedly agreed to assume the obligations of its predecessor. *Id.* at 5–6.

6. While recognizing that there is another exception that applies when the transaction amounts to a *de facto* merger of the predecessor and successor, the trial court stated in a footnote that the *de facto* merger exception and "mere continuation" exception are "inter-related" and thus, it declined to separately discuss the *de facto* merger exception. *Id.* at 6 n. 4.

7. The trial court characterized that factual dispute as follows:

on to consider whether the "mere continuation" avenue to successor liability would nevertheless be unavailable to impose liability on the Vanadium Group. In that regard, it explained that "Pennsylvania courts have never considered whether the continuation exception should apply where the buying corporation acquired the assets from a secured creditor of the selling corporation rather than from the selling corporation itself." *Id.* at 9. Ultimately, the trial court concluded that "[e]xceptions to the general rule against successor liability that would protect the interests of general creditors at the expense of a secured creditor would be inconsistent with the principles of creditor law which protect lien holders vis-à-vis general creditors." *Id.* Thus, the court refused to permit the imposition of successor liability here, holding that "it would be inconsistent with the legislative policy giving preference to the interests of secured creditors over the interests of general creditors." *Id.* at 19. As such, the court entered summary judgment in favor of the Vanadium Group and against Continental.

On appeal, however, the Superior Court reversed, holding that "a sale pursuant to section 9504 of the UCC," which governs a secured creditor's disposal of collateral following a

Prior to the consensual sale and foreclosure, Frank S. Schneider was the sole shareholder and chief operating officer of the Schneider Companies. Frank S. Schneider is not a shareholder of the corporation (Vanadium) that acquired the assets from the banks.

Continental contends that it can establish that Frank S. Schneider has continued to participate in the operations of the businesses. Furthermore, he should be characterized as an owner because of the role that he and his son played in the management group's acquisition of the assets of the on-going business.

It is Continental's position that Frank S. Schneider and his wife loaned approximately $2 million to their son (a straw party) that was transferred to Capital Diverse Venture Corporation ("Capital"), a corporation nominally owned by the son. Capital furnished the $2 million to Vanadium in order for Vanadium to purchase the assets from the banks. Through this investment, the son acquired preferred stock in Vanadium that could be converted into common stock. When converted, the son would own 70% of the Vanadium stock. Furthermore, the $2 million loan from Mr. and Mrs. Schneider to their son is secured by the common stock of Capital. This evidence, according to Continental, will support a finding that the new entity was owned and controlled by the same person who owned and controlled the old entity.

*Id.* at 3–4 (footnote omitted).

debtor's default, *see* 13 Pa.C.S. § 9504, "does not, as a matter of law, preclude a creditor's claim against the purchaser based on successor liability." *Continental Ins. Co. v. Schneider, Inc.*, 810 A.2d 127, 133 (Pa.Super.2002). While acknowledging that the UCC provides "very specific protections to secured creditors," the Superior Court explained that "there is no language in section 9504 which would bar judicial inquiry into the propriety of the transaction itself." *Id.* In fact, the Superior Court noted, section 9–504 "specifically contemplates that a disposition of assets by a secured creditor may not be made with unfettered discretion," as it provides that "the disposition including the method, manner, time, place, and terms must be commercially reasonable." *Id.* (quoting 13 Pa.C.S. § 9504(c)). Moreover, the court pointed out, the UCC generally provides that "general principles of law and equity shall supplement its provisions unless displaced." *Id.* (citing 13 Pa.C.S. § 1103). Accordingly, the Superior Court rejected the trial court's conclusion that Continental was barred from pursuing a successor liability claim against the Vanadium Group because the Banks had sold the Schneider Companies' assets to the Vanadium Group in a section 9–504 transaction.

Having concluded that the trial court's entry of summary judgment in favor of the Vanadium Group on this basis was in error, the Superior Court went on to consider the Vanadium Group's alternative argument that it was nevertheless entitled to summary judgment because none of the recognized exceptions to the general rule against successor liability were applicable under the facts of this case. Ultimately, however, the Superior Court stated that the record reflects that the Vanadium Group "operated substantially the same businesses serving the same clients and had the same employees working in the same offices as the former Schneider companies" and that "there is clearly a genuine dispute over continuity of ownership and control." 810 A.2d at 135. Accordingly, the Superior Court found that there were genuine issues of material fact that precluded a determination as to whether either the mere continuation exception or the *de facto* merger exception were applicable, and thus, it declined to enter summary

judgment in the Vanadium Group's favor on that basis and instead remanded the case so that the fact-finder could determine whether either of those exceptions applied.

The Vanadium Group appealed and this Court granted allowance of appeal to address the purely legal question of whether a general creditor of a debtor may pursue successor liability claims against an entity that purchased the debtor's assets from a secured creditor of the debtor in a commercially reasonable transaction pursuant to section 9–504 of the UCC.

 Summary judgment may only be entered if the record clearly demonstrates that there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. *Sphere Drake Ins. Co. v. Philadelphia Gas Works,* 566 Pa. 541, 782 A.2d 510, 512 (2001). Meanwhile, a trial court's order on summary judgment will only be reversed where the court committed an error of law or clearly abused its discretion. *Basile v. H & R Block, Inc.,* 563 Pa. 359, 761 A.2d 1115, 1118 (2000). In the instant case, the issue presented is one of law and thus, our scope of review is plenary. *Phillips v. A–Best Products Co.,* 542 Pa. 124, 665 A.2d 1167, 1170 (1995).

 With respect to successor liability in this Commonwealth, it is well-established that "when one company sells or transfers all of its assets to another company, the purchasing or receiving company is not responsible for the debts and liabilities of the selling company simply because it acquired the seller's property." *Hill,* 603 A.2d at 605; *see also* 15 William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 7122 (perm.ed., rev.vol.2004). This general rule of non-liability can be overcome, however, if it is established that (1) the purchaser expressly or implicitly agreed to assume liability, (2) the transaction amounted to a consolidation or merger, (3) the purchasing corporation was merely a continuation of the selling corporation, (4) the transaction was fraudulently entered into to escape liability, or (5) the transfer was without adequate consideration and no provi-

sions were made for creditors of the selling corporation.[8] *Hill,* 603 A.2d at 605; Fletcher, *supra,* § 7122.

■ Here, the Vanadium Group acknowledges the usual applicability of these exceptions to the general rule against successor liability, but contends that the exceptions should not be available here, where the assets of the predecessor company were not sold directly to the alleged successor, but rather made their way to the alleged successor by way of a UCC foreclosure sale. Resolution of this claim therefore requires close attention to the UCC provisions regarding the rights of secured creditors upon default and the effect of foreclosure sales pursuant to section 9–504 of the UCC. *See* 13 Pa.C.S. § 9504.

■ To that end, we note that pursuant to the UCC, a creditor with a security interest in collateral has a right to take possession of that collateral upon the debtor's default. *See* 13 Pa.C.S. § 9503(a).[9] Thereafter, the secured creditor has the right to "sell, lease or otherwise dispose of" the collateral by public or private proceeding, although "every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable." 13 Pa. C.S. § 9504(a), (c). Upon completion of the sale, the proceeds are to be used first to pay the reasonable expenses and legal fees incurred by the secured party, second to satisfy the indebtedness to the secured creditor that was secured by the collateral, and third to satisfy any indebtedness secured by a

8. This Commonwealth has also recognized a "product-line" exception to the general rule against successor liability, which permits successor liability to be imposed for injuries caused by defective products manufactured by a predecessor if the successor continues to manufacture the product. *See Hill,* 603 A.2d at 605–06; *Dawejko v. Jorgensen Steel Co.,* 290 Pa.Super. 15, 434 A.2d 106, 110 (1981). However, this exception clearly has no applicability in the instant case.

9. This provision has been amended and re-codified as UCC § 9–609, 13 Pa.C.S. § 9609, by Act of June 8, 2001, P.L. 123, No. 18, § 16, effective July 1, 2001. However, as with section 9–504, we will continue to refer to and rely upon the version that was in effect when the transactions at issue in this case transpired as that is the version on which the lower courts and parties have relied and no one argues that the current provision should apply retroactively to this case.

subordinate security interest in the collateral. 13 Pa.C.S. § 9504(a)(1)-(3). Meanwhile, if the sale yields a surplus, the secured creditor must account to the debtor for that surplus. 13 Pa.C.S. § 9504(b). With respect to the rights of those who purchase collateral at a foreclosure sale, the UCC provides as follows:

(d) Rights of purchaser for value of disposed collateral.— When collateral is disposed of by a secured party after default, the disposition transfers to a purchaser for value all of the rights of the debtor therein, discharges the security interest under which it is made and any security interest or lien subordinate thereto. The purchaser takes free of all such rights and interest even though the secured party fails to comply with the requirements of this chapter or of any judicial proceedings:

(1) in the case of a public sale, if the purchaser has no knowledge of any defects in the sale and if he does not buy in collusion with the secured party, other bidders or the person conducting the sale; or

(2) in any other case, if the purchaser acts in good faith.

13 Pa.C.S. § 9504(d). Thus, it is clear that in circumstances in which a commercially reasonable foreclosure sale does not yield a surplus, as is the case here, the secured creditor's disposition of the collateral by foreclosure sale discharges any subordinate security interest or other subordinate lien in the collateral. *See id.*

Relying on these UCC provisions, the Vanadium Group urges us to find that successor liability claims cannot proceed against purchasers of assets in section 9–504 sales, contending that the Superior Court's finding to the contrary will "create legal and practical uncertainties in [this] legislative framework designed to allow secured creditors to exercise their rights to collateral." Appellants' Brf. at 17. Specifically, the Vanadium Group argues that allowing such successor liability claims to proceed will permit an unsecured creditor to "undo an unchallenged, commercially reasonable Article 9 sale" in direct contravention of the UCC provisions that provide that such a sale

extinguishes the claims of unsecured creditors as a matter of law. *Id.* We disagree.

As courts from other jurisdictions have recognized, there is a distinction between permitting an unsecured creditor to assert a lien against assets that have been sold pursuant to a section 9–504 foreclosure sale and permitting an unsecured creditor to assert a claim of successor liability against the purchaser of that collateral. *See Glynwed, Inc. v. Plastimatic, Inc.,* 869 F.Supp. 265, 274 (D.N.J.1994) (stating that it is a "distinction with a difference" that "[plaintiff] is not asserting an interest in the collateral purchased at the 9–504 sale, but is attempting to hold [defendants] liable as a successor corporation under the law of successor liability"); *Glentel, Inc. v. Wireless Ventures, LLC,* 362 F.Supp.2d 992, 1000 (N.D.Ind.2005) (permitting successor liability claim to proceed, noting that plaintiff "is not attempting to enforce a lien on the assets [purchased at the UCC foreclosure sale]; rather, it is pursuing a claim of successor liability to recover a debt"). Indeed, while the UCC specifically provides that a section 9–504 sale "discharges ... any ... lien subordinate [to any security interest]," 13 Pa.C.S. § 9504(d), it says nothing about subsequent claims for successor liability against the purchaser of the collateral. Moreover, as the Superior Court recognized, section 1–103 of the UCC, entitled "Supplementary general principles of law applicable," specifically provides that "principles of law and equity ... shall supplement" the UCC's provisions "unless displaced" by particular provisions. 13 Pa.C.S. § 1103. Under these circumstances, we agree with the Superior Court below that a UCC foreclosure sale does not extinguish potential successor liability claims and that the principles of law and equity embodied in this Commonwealth's successor liability law remain available to unsecured creditors of companies whose assets are sold in a section 9–504 sale.

As stated above, the Vanadium Group nevertheless argues that it is contrary to the underlying aims of section 9–504 to permit Continental's successor liability claim to proceed against it as the claim threatens to "undo" the valid section 9–504 sale, thereby devaluing the Banks' security interests.

However, this is simply not the case. As the Vanadium Group itself recognizes, Continental's claim does not attack the underlying validity of the section 9–504 sale as commercially unreasonable and does not seek to recover from the Banks what they obtained as proceeds in the section 9–504 transaction. Rather, Continental merely asserts that the Vanadium Group is a successor to the Schneider Companies and as such, can be held liable for the debts of the Schneider Companies. Significantly, success on this claim will neither revive Continental's lien on the assets sold at the section 9–504 sale nor give Continental any right to recover from the Banks. We reiterate: success, if obtained, will only permit Continental to proceed against the Vanadium Group as the Schneider Companies' successor. Accordingly, there is simply no merit to the Vanadium Group's assertion that a successful successor liability claim will "undo" an otherwise valid section 9–504 sale.

Importantly, cases from other jurisdictions that have considered whether successor liability claims can proceed against entities that purchase assets in a commercially reasonable disposition of collateral under the UCC have reached the same conclusion that we reach here.[10] Specifically, in *Glynwed, Inc. v. Plastimatic, Inc.*, the United States District Court for the District of New Jersey held that "nothing in the UCC supports [the] argument that the 9–504 sale provides a safe harbor against successor liability claims," 869 F.Supp. at 274, and it therefore rejected the plaintiff's argument that a "pur-

**10.** Although these cases involved other jurisdictions' versions of the UCC, they are nevertheless persuasive authority here as the relevant provisions in their UCC statutes are substantially similar to the provisions in the Pennsylvania UCC and one of the goals of uniform laws such as the UCC is uniformity of application. *See* 1 Pa.C.S. § 1927 ("Statutes uniform with those of other states shall be interpreted and construed to effect their general purpose to make uniform the laws of those states which enact them."); *Commonwealth v. Nat'l Bank & Trust Co. of Cent. Pennsylvania*, 469 Pa. 188, 364 A.2d 1331, 1335 (1976) (While it is a truism that decisions of sister states are not binding precedent on this Court, they may be persuasive authority, and are entitled to even greater deference where consistency and uniformity of application are essential elements of a comprehensive statutory scheme like that contemplated by the Uniform Commercial Code.). Moreover, the policy concerns implicated in the cases from other jurisdictions are identical to those implicated here.

chasing company can never be exposed to corporate successor liability for commercial debt where it acquires the assets pursuant to a foreclosure sale under section 9–504." *Id.* at 272. Likewise, in *G.P. Publications, Inc. v. Quebecor Printing—St. Paul, Inc.*, the Court of Appeals of North Carolina held that a "successor liability claim is not *absolutely* barred where a secured creditor purchases the debtor's assets via Article 9 . . .," thereby rejecting the plaintiff's argument that section 9–504 "necessarily preempts a mere continuation claim because the very purpose of conducting such a sale is to extinguish all inferior interests and convey title free of all claims or encumbrances." 125 N.C.App. 424, 481 S.E.2d 674, 679–80 (1997) (emphasis in original). Most recently, in *Glentel, Inc. v. Wireless Ventures, LLC,* the United States District Court for the Northern District of Indiana refused to find that "a claim of successor liability against a purchaser of assets is precluded when the purchaser has obtained the assets following a commercially reasonable disposition of collateral under the Uniform Commercial Code," relying in part on *Glynwyd,* and further noting that the defendants had not provided, and the court had not independently discovered, any authority to support the contrary conclusion. 362 F.Supp.2d at 999–1000.

■ In sum, like these other jurisdictions, we hold that neither the UCC itself nor the policy underlying it demands the imposition of an absolute bar to an unsecured creditor's assertion of a successor liability claim against an entity that has purchased the debtor's assets in a section 9–504 foreclosure sale. Rather, we conclude that such claims may proceed and if the unsecured creditor can establish that one of the exceptions to the general rule against successor liability applies, it may collect the predecessor's debt from the successor. Accordingly, applying those principles in the instant case, Continental is not barred from asserting a successor liability claim against the Vanadium Group on account of the fact that the Vanadium Group purchased the Schneider Companies' assets in a commercially reasonable section 9–504 foreclosure

sale.[11]

The order of the Superior Court is affirmed.

**11.** The Vanadium Group urges that we go on to consider whether the Superior Court erred in concluding that there were genuine issues of material fact that precluded a finding as to whether the mere continuation and *de facto* merger exceptions to the general rule against successor liability applied here. Specifically, the Vanadium Group urges this Court to consider the applicability of those exceptions, find that neither applies on the facts of this case, and enter judgment in its favor. However, the question presented in the Vanadium Group's Petition for Allowance of Appeal was merely the threshold question of:

> Whether a general creditor of predecessor entities may pursue successor liability claims against new entities which purchased assets from secured creditors of the predecessor entities in a commercially reasonable transaction pursuant to Section 9504 of the Pennsylvania Commercial Code, when the secured creditors were not made whole from the proceeds.

Vanadium Group's Pet'n for Allowance of Appeal at 3. As such, we did not grant allowance of appeal to consider the independently significant and factually complex question of whether the relationship between the Vanadium Group and the Schneider Companies is such that the Vanadium Group can be held liable to Continental as the Schneider Companies' successor under the exceptions to the general rule against successor liability. Thus, we decline to reach that question here.