IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Youth Services Agency,                    :
                                          :
                    Petitioner            :
                                          :
          v.                              : No. 423 C.D. 2021
                                          : Argued: September 12, 2022
Department of Labor and Industry,         :
Office of Unemployment                    :
Compensation Tax Services,                :
                                          :
                    Respondent            :


BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE LORI A. DUMAS, Judge
           HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                    FILED:  December 28, 2022


          Youth Services Agency (YSA) petitions for review of the order of the
Executive Deputy Secretary of Labor and Industry of the Department of Labor and
Industry (Department) that denied the petition for reassessment filed by YSA.  YSA
objected to the notice of assessment filed by the Office of Unemployment
Compensation Tax Services (Office) against YSA for unpaid unemployment
compensation (UC) employer and/or employee contributions, interest, and penalties
in the amount of $299,333.47, owed by Youth Services Agency of Pennsylvania

(YSA-PA) under the Unemployment Compensation Law (Law)[1] on the basis of successor liability. The Office assessment notice stated that "[t]he reason for successor liability is that: [YSA] is merely a continuation of [YSA-PA]; and/or the transfer of [YSA-PA's] assets, including its work[]force, management, organization[,] and business to [YSA] was without adequate consideration and no provisions were made for [YSA-PA's] creditors." Reproduced Record (R.R.) at 5a. YSA argues that the Department erred in concluding that YSA was a successor to YSA-PA, and thus, liable for YSA-PA's unpaid UC contributions, which the Office disputes. After review of the record and applicable law, we affirm.

The procedural background of this matter may be summarized as follows. A hearing before the Department's hearing officer was held on February 26, 2020, during which YSA and the Office presented testimony, documents, and argument on the question of YSA's successor liability. The Office presented testimony from Christian Edwards, a Department employment security specialist who worked with the Department for 14 years. YSA presented testimony from Jay Deppeler, Executive Vice President of Inperium, a non-profit organization affiliated with YSA. After the hearing and consideration of the parties' post-hearing briefs, the Department denied YSA's petition for reassessment because YSA was a successor business to YSA-PA such that successor liability applied. R.R. at 492a-507a.

The relevant facts as found by the Department are as follows. YSA is a Pennsylvania non-profit organization that provides services to at-risk youth through residential treatment, treatment, education, vocational skills, and adventure. R.R. at 495a. YSA was created in 1975, and was then known as Youth Services of

_____

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§751-919.10.

2

Bucks County. *Id.* Youth Services of Bucks County requested to elect reimbursable financing for UC purposes[2] in 2000, on a form signed by Executive Director Roger Dawson. *Id.* Youth Services of Bucks County changed its name to YSA in 2002. *Id.* at 495a-96a. YSA registered as an employer for UC taxes and elected reimbursable financing in 2003, on forms signed by Controller William Pitcavage. *Id.* at 496a.

Another non-profit entity, Youth Services Alternatives, requested to elect reimbursable UC financing in 2004, and again in 2005, on forms signed by Comptroller William Pitcavage, the same individual who filed forms for YSA. R.R. at 496a-97a. Attached to its request was a plan of division and articles of incorporation for Youth Services Alternatives, whereby YSA intended to divide itself into two separate corporations, with the existing corporation to retain the name of YSA, and the new corporation to be named Youth Services Alternatives. *Id.* Both YSA and Youth Services Alternatives would continue to provide services to at-risk youth, and the proposed division was designed to provide more effective program administration. *Id.* at 61a. Roger Dawson, Executive Director of YSA, was listed as president and CEO of Youth Services Alternatives. *Id.* at 497a. Youth Services

---

[2] In general, and relevant here, employers are required to contribute UC taxes in one of two ways. A contributing employer must pay contributions at a rate determined by a formula under the Law, that is based on the number of employees, payroll, and employer's experience rating, among other factors. A contributing employer's UC taxes are held in a reserve account over the life of the employer, from which its employee UC benefits are subtracted. Sections 301, 301.1, 301.2, 302, and 304 of the Law, 43 P.S. §§781, 781.1, 781.2, 782, and 784. A non-profit employer may elect to pay its UC contributions on a reimbursement basis, referred to as a reimbursable employer, based on the actual amount of UC benefits paid to its employees, and billed on a quarterly basis by the Department. Sections 1101-1110 of the Law, 43 P.S. §§901-910. A reimbursable employer is required to provide and file with the Department a security bond in the amount of one per centum of its taxable wages for the most recent four calendar quarters preceding its election, or it may provide a security deposit of equal value to the Department. Section 1106 of the Law, 43 P.S. §906.

Alternatives filed its registration form in 2005 and listed YSA as its owner and responsible party. *Id.* In 2011, YSA-PA registered as an employer for UC purposes, with a trade name of Youth Services Alternatives. *Id.* at 498a. YSA-PA requested to elect reimbursable financing in 2012 and provided a bond to the Department in 2013, which was signed by Mr. Dawson as principal. *Id.* at 499a. Various filings for YSA and Youth Services Alternatives in the Department's files bear the same Department account number (1306818), as filled in by the submitters, where the primary signatories are Mr. Dawson or Mr. Pitcavage. *Id.*

In 2015, the Office received information from YSA-PA's bonding company cancelling bonding services for "[YSA-PA] (previously Youth Services Alternatives)." R.R. at 498a. The last date on which YSA-PA reported wages to the Department was December 31, 2014. *Id.* The Department inquired about YSA-PA's status and received information from Rebecca Dawson, Human Resources Director of YSA and the wife of Roger Dawson, that YSA-PA "had closed." *Id.* at 440a, 498a. To determine what happened to YSA-PA's workforce, the Department generated an employee movement report, which showed the movement of a number of employees from YSA-PA to YSA in the first quarter of 2015. *Id.* at 498a. As of January 1, 2015, the Department's UC maintenance system indicated that YSA-PA, with account number 1306818-6, was inactive with a delinquency amount of $325,179.81. *Id.* at 499a-500a.

The Department reviewed and summarized YSA-PA's United States (U.S.) tax form 990, (annual tax return for non-profit organizations) for the tax years ending June 30, 2014, June 30, 2015, and June 30, 2016. YSA-PA's return for the year ending June 30, 2014, showed that YSA-PA had net assets of $725,715; for the year ending June 30, 2015, it had net assets of $633,570; and for the year ending

4

June 30, 2016, it had net assets of negative $3,910. R.R. at 500a. The preparer of YSA-PA's 990 forms for these years answered "no" to the question whether YSA-PA ceased conducting business or made significant changes to how it conducts its program. *Id.* However, on YSA-PA's 990 form for the tax year ending June 30, 2016, YSA-PA was listed as "inactive in current fiscal year." *Id.*

YSA became affiliated with Inperium in 2017, with Executive Vice President of Inperium, Jay Deppeler, overseeing the affiliation and the affiliation agreement. R.R. at 500a. Mr. Deppeler testified that Inperium is a non-profit organization, with a mission to affiliate with other non-profit agencies to leverage economies of scale in back-office and administrative services to better serve clients. *Id.* at 364a-65a. Per the affiliation agreement with YSA, Mr. Deppeler of Inperium became the sole member of YSA's Board. *Id.* at 364. YSA's mission did not change after it affiliated with Inperium. *Id.* At the time of the affiliation, Inperium was aware of YSA-PA's UC tax liabilities, but the affiliation agreement showed YSA's only liability as a loan owed to Mr. Dawson. *Id.* at 500. The affiliation was between Inperium and YSA, not with YSA-PA, which Mr. Dawson wanted to keep separate. *Id.* at 501a. The Office argued that its various exhibits, when read together, show a commonality of management between YSA and YSA-PA. *Id.* The Office determined that YSA-PA's workforce was transferred to YSA in the first quarter of 2015. *Id.* Based on its commonality of management determination and the transfer of workforce determination, the Office initiated the successor liability assessment against YSA, as a continuation of YSA-PA, or as a transfer of YSA-PA's assets to YSA without adequate consideration and no provisions for YSA-PA's creditors. *Id.*

The Department focused on YSA's sole ground for reassessment raised in its petition, namely, whether YSA is a successor business to YSA-PA, such that

5

YSA is liable for YSA-PA's unpaid UC contributions. R.R. at 502a. The Department explained the general rule regarding successor liability in Pennsylvania, from *Continental Insurance Company v. Schneider, Inc.*, 873 A.2d 1286, 1291 (Pa. 2005) (*Schneider*), as follows: "[W]hen one company sells or transfers its assets to another company, the purchasing or receiving company is not responsible for the debts and liabilities of the selling company simply because it acquired the seller's property." R.R. at 502a. The Department further explained that under *Schneider* this general rule of non-liability may be overcome if any one of the following five conditions is met: (1) the purchaser expressly or implicitly agreed to assume liability; (2) the transaction amounted to a consolidation or merger; (3) the purchasing corporation was merely a continuation of the selling corporation; (4) the transaction was fraudulently entered into to escape liability; or (5) the transfer was without adequate consideration and no provisions were made for the creditors of the selling corporation. *Id.* at 502a-03a.

As to the first prong, the Department concluded that no express or implicit agreement by YSA to assume liability for YSA-PA's debts was clear on the record. R.R. at 503a. If anything, the evidence presented was to the contrary. *Id.* As to the fourth prong, the Department concluded there was no direct evidence of fraud. *Id.* at 505a. As to the fifth prong, the Department found no evidence regarding whether the transfer was made without adequate consideration or provisions for YSA-PA's creditors. *Id.* The Department therefore analyzed whether substantial evidence existed to satisfy the second or third prong of *Schneider.*

As to the second prong, the Department concluded there was substantial evidence that the relationship between YSA-PA and YSA amounted to a consolidation or merger. R.R. at 503a. This conclusion was supported by an email

6

from Rebecca Dawson, wife of Roger Dawson, that YSA-PA had closed, YSA-PA's 990 form for the period ending June 30, 2016, showing that YSA-PA was inactive during the 2015-16 fiscal year and it had a negative balance. *Id.*; *see also id.* at 503a, 440a-41a, 442a-43a. The Department found it "telling" that the Office movement report showed that many of YSA-PA's employees were last reported as employed by YSA-PA in the fourth quarter of 2014, and were next reported as employed by YSA in the first quarter of 2015. *Id.*; *see also id.* at 22a-24a. Based on this information, the Department found that YSA-PA transferred its workforce to YSA in the beginning of 2015, and that the two entities shared a commonality of management, through Mr. Dawson and Mr. Pitcavage. *Id.* at 503a.

As to the third prong, the Department considered whether YSA was a continuation of YSA-PA, or stated another way, whether the transaction amounted to a *de facto* merger as opposed to an ordinary purchase and sale of assets, using the factors set forth in *Glynwed, Inc. v. Plastimatic, Inc.*, 762 F.Supp. 265, 275-76 (D.N.J. 1994) (quoting *Philadelphia Electric Company v. Hercules, Inc.*, 762 F.2d 303, 310 (3d Cir. 1985)) (*PECO*) (applying Pennsylvania law). R.R. at 503-04a. These four factors are: (1) whether there is a continuation of the enterprise of the seller corporation through a continuity of management, personnel, physical location, assets, and general business operations; (2) whether the seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible; (3) whether the purchasing corporation assumes those obligations of the seller corporation necessary for uninterrupted continuation of normal business operations of the seller; and (4) whether there is a continuity of ownership/shareholders. *PECO*, 762 F.2d at 310.

7

As to the first factor, the Department concluded that there was a continuation of YSA-PA's personnel to YSA, as discussed above and as evidenced by the employee movement, as well as the shared management of the two entities, through Mr. Dawson and Mr. Pitcavage. R.R. at 504a. The Department found no evidence or direct testimony as to the physical location, assets, or general business operations of the two entities. *Id.* The Department found evidence of the second factor, a cessation of YSA-PA's ordinary business, as discussed above, through Ms. Dawson's October 29, 2015 email chain with the Office that YSA-PA was closed and that its bond was cancelled. *Id*.; *see also id.* at 440a-41a. The Department found that YSA-PA had not actually dissolved, because YSA-PA was memorialized, and lease rights to a nature center were reserved to it, in the affiliation agreement between YSA and Inperium. *Id.* at 504a. The Department found no evidence of the third factor, as the affiliation agreement between Inperium and YSA was silent regarding any YSA-PA liabilities. *Id.* As to the fourth factor, the Department found that continuity of ownership was clearly present to the extent that Roger Dawson is the CEO for both YSA and YSA-PA. *Id.* at 505a. Based on its analysis of the *PECO* factors, the Department concluded that, on balance, the evidence supported a finding that YSA was a continuation of YSA-PA for purposes of successor liability.

The Department reviewed the overall record and concluded that the Office established that the relationship between YSA and YSA-PA amounted to a consolidation or merger under the second prong of *Schneider*. R.R. at 505a. The Department also concluded that the Office established that YSA was a continuation of YSA-PA because the evidence supported some of the elements under the third prong of *Schneider*. *Id.* The Department relied on the U.S. Supreme Court opinion in *Frank Lyon Company v. U.S.*, 435 U.S. 561, 572-73 (1978), to apply substance

8

over form in these kinds of cases, looking to "'the objective economic realities of a transaction rather than to the particular form the parties employed'" to determine where a tax burden should rest, "particularly where the predecessor party continues to retain significant control over the property that has been transferred." R.R. at 505a. The Department concluded that the "objective economic reality" is that YSA was a mere continuation of YSA-PA, and under the principle of successor liability, YSA should be responsible for YSA-PA's unpaid UC taxes, interest, and penalties. *Id.* at 506a. YSA then petitioned the Court for review.[3]

YSA presents three arguments as to why it should not be held liable as YSA-PA's successor. A review of the relevant provisions of the Law and Department regulations will assist in our analysis.

"Contributions" is defined in Section 4(g) of the Law, 43 P.S. §753(g), as follows:

> "Contributions" means the money payments required to be paid into the [UC] Fund by employers with respect to employment, which payments shall be used for the creation of financial reserves for the payment of compensation provided in this act. This meaning includes, where appropriate in the enforcement provisions of this [Law], payments in lieu of contributions required to be paid by employers operating on a reimbursement basis as provided in Articles X, XI and XII of this act.[] "Contributions" also means, where appropriate in this [Law], money payments required to be paid into the [UC] Fund by employees as provided in this [Law].

---

[3] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law occurred, or whether necessary findings of fact were supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704. As to questions of law, our scope of review is plenary and our standard of review is *de novo*. *Hospitality Management Corporation v. Department of Labor and Industry, Office of Unemployment Compensation Tax Services*, 171 A.3d 936, 938 n.5 (Pa. Cmwlth. 2017).

Relevant here, Article XI of the Law, 43 P.S. §§901-910, governs non-profit employers such as YSA and YSA-PA, and permits such employers to elect reimbursable financing.

The UC Fund is governed by Section 601 of the Law, 43 P.S. §841, and creates a fund separate from general Commonwealth funds, into which all employer and employee contributions are to be paid (with some exceptions not relevant here) to fund UC benefits. Section 63.100 of the Department's regulations, 34 Pa. Code. §63.100, specifically provides that "payments in lieu of contributions collected under the [L]aw" shall supplement the list of payments made into the UC fund under [S]ection 601 of the Law.

Section 301 of the Law, 43 P.S. §781, generally governs employer contribution rates, successors-in-interest, and appeals. Section 301(d)(1)(A) of the Law, 43 P.S. §781(d)(1)(A), permits an employer that transfers its business or workforce, in whole or in part, to a "successor-in-interest" that continues "essentially the same business activity" to request that its experience record and reserve account be transferred to its successor-in-interest. Section 301(d)(1)(B) of the Law, 43 P.S. §781(d)(1)(B), provides that the Department shall transfer the employer's experience record and reserve account to its successor, notwithstanding the provisions of paragraph (A), when "an employer subject to the contribution provisions" of the Law, transfers its business or workforce to another employer, whether the transfer was by "merger, consolidation, sale[,] or transfer" when the employer controlled, owned, or managed its successor, or when both entities were managed by the same interest. Section 301(e) of the Law, 43 P.S. §781(e), permits an employer to protest the clerical accuracy of its reserve account, or to appeal its contribution rate to the Department.

10

Section 304 of the Law, 43 P.S. §784, governs employer reports used by the Department to assess employer contributions, and provides employers the right to appeal their assessments to the Department. Relevant here, Section 304(b) of the Law, 43 P.S. §784(b), provides that "[a]ny employer against whom an assessment is made" may petition the Department for a reassessment within 15 days after its assessment notice, which petition "shall set forth therein specifically and in detail the grounds and reasons" that the reassessment is erroneous. The Department shall provide notice and hold hearings, as determined by Department regulations. Section 63.26 of the Department's regulations, 34 Pa. Code §63.26, echoes Section 304 of the Law, and sets forth appeal procedures. These provisions govern YSA's petition for reassessment and hearing in this matter.

The following provisions of Article XI of the Law governing non-profit organizations are also relevant here. Section 1101 of the Law, 43 P.S. §901, defines a non-profit organization as a religious, charitable, educational, or other organization described in Section 501(c)(3) of the Federal Internal Revenue Code of 1954, 26 U.S.C. §501(c)(3), which is exempt from federal income tax. Section 1103 of the Law, 43 P.S. §903, provides that a non-profit employer that makes payments as a contributing employer is subject to the provisions governing contributions in the Law. If a non-profit organization fails to file the required reports, the Department may choose the method of financing, either contributory or reimbursement. Section 1104(a) of the Law, 43 P.S. §904(a), provides that any non-profit organization which becomes

> liable to the contribution provisions of [the Law] may, in lieu of payment of such contributions, elect to pay to the [D]epartment for the [UC] Fund an amount equal to the amount of regular benefits and one-half of the extended

11

benefits paid, that is attributable to service in the employ
of such non[-]profit organization.

Both YSA and YSA-PA are employers liable to pay UC contributions, and both elected to pay by reimbursement under this Section.

Section 1105 of the Law, 43 P.S. §905, provides that a non-profit organization that disagrees with the Department's determination as to its status as a reimbursable employer, or the termination of its status, may appeal to the Department as provided in Section 301 of the Law.

Section 1106 of the Law, 43 P.S. §906, governs payments in lieu of contributions made by reimbursable employers. Section 1106(a) of the Law, 43 P.S. §906(a), provides that the Department shall bill non-profit reimbursable employers quarterly (or it may choose another period) for "the amount of benefits charged to its account" for the relevant period. Payment is due within 30 days unless the employer sought "review and redetermination under Section 301 of [the Law]." Past due payments of amounts in lieu of contributions are subject to interest and penalties under Section 1106(c) of the Law, 43 P.S. §906(c). Under Section 1106(d) of the Law, 43 P.S. §906(d), reimbursable employers must provide a surety bond or security deposit of equal value to the Department in the amount of one per cent of its taxable wages for the most recent four calendar quarters. Notably, Section 1106(d) of the Law does not address how or if the Department may utilize the bond or security deposit of a reimbursable employer to recover any UC taxes owed. Instead, Section 304 of the Law addresses the Department's enforcement options, through an assessment of taxes owed, and an employer's appeal rights through reassessment.

Section 1107(b) of the Law, 43 P.S. §907(b), provides that if a reimbursable non-profit employer is delinquent in its payments, the Department may

terminate its election to make reimbursement payments, and change its status to a contributory employer for the next two tax years.

Section 1108 of the Law, 43 P.S. §908, provides that if "benefits paid to an individual are based on wages paid by more than one employer" and one or more of such employers are reimbursable employers, the amount payable to the UC fund by each employer shall be determined by a defined formula. This Section applies to UC taxes owed for employees shared by more than one employer. YSA argues that this Section should apply here, which the Department rejects as not applicable.

YSA first argues that successor liability should not apply to reimbursable employers because the Law treats contributing and reimbursable employers differently. YSA contends that, because Article XI of the Law, governing non-profit organizations that are reimbursable employers, fails to discuss successor liability, the principle should not apply to YSA. YSA argues that although Section 301(d)(1) of the Law includes and defines "successor-in-interest" liability, that Section applies to the transfer of the experience record and reserve account balance to a successor-in-interest contributory employer, and does not apply to a reimbursable employer such as YSA. The Office first responds that YSA waived this argument by not raising it before the Department. In the alternative, if not waived, the Office responds that the plain language of Section 4(g) of the Law makes enforcement through successor liability applicable to all employers, regardless of the employer's method of paying its UC taxes. The Office responds that Section 4(g) of the Law defines contributions to include reimbursement payments, and Section 304(b) of the Law governs reassessment petitions before the Department, regardless of the employer's payment method.

13

The crux of YSA's appeal is that the Department's factual findings on successor liability are not supported by substantial evidence, which the Office rejects. YSA does not dispute that YSA-PA transferred employees to YSA in 2015, or that YSA and YSA-PA shared management and ownership. YSA questions the accuracy of YSA's registration form, in which YSA-PA is listed as a predecessor to YSA, because that information was entered by the Office and not by YSA. R.R. at 16a-21a, 350a-51a. YSA argues that YSA-PA and YSA did not merge because no formal articles of merger were filed. YSA further argues that YSA-PA continues to be active, as demonstrated by the affiliation agreement between YSA and Inperium, which required YSA to use its best efforts to transfer the lease of a nature center to YSA-PA. R.R. 108a. The agreement between YSA and Inperium specifies that, effective as of the closing date of YSA's affiliation with Inperium, "YSA will enter into an agreement with [YSA-PA] pursuant to which YSA will license from [YSA-PA] the right to continue to operate the Nature Center Program." *Id.* The license agreement for YSA to continue to operate the program will terminate in the event "Ms. Dawson's employment with Inperium terminates for any reason." *Id.* YSA argues that these factors weigh against a *de facto* merger of YSA and YSA-PA, and that the Department erred in concluding that YSA was YSA-PA's successor.

The Office responds that the record as a whole contains substantial evidence to support successor liability, especially the findings of employee movement, common management and ownership, and the communication from Ms. Dawson that YSA-PA had closed. *See* R.R. at 22a-24a, 46a-53a, 60a-79a, 440a-41a. The Office further responds that the Department did not rely on the information in the form questioned by YSA, and that the Department acknowledged YSA-PA's reservation of rights in the affiliation agreement.

14

YSA next argues that the Office should be barred from pursuing YSA through successor liability when it failed to timely pursue YSA-PA, and that the tax burden should be allocated between YSA and YSA-PA under Section 1108(a) of the Law. YSA also argues that the Office's assessment of UC taxes owed should be limited to the amount of YSA's bond. In support of this argument, YSA cites Section 1504 of the Statutory Construction Act of 1972, 1 Pa. C.S. §1504, *Lilian v. Commonwealth*, 354 A.2d 250 (Pa. 1976), and *Pittsburgh Coal Company v. School District of Forward Township*, 78 A.2d 253 (Pa. 1951), for the proposition that when a statutory remedy is provided, it must be strictly pursued. YSA argues that the Department erred by applying the common law doctrine of successor liability to YSA as a reimbursable employer, when successor liability is not defined in the Law. Under this theory, YSA seeks to limit the Office's remedy for taxes owed to the amount of YSA's bond, as described in Section 1106(d) of the Law.

The Office responds that the Law provides no grounds to bar an action against YSA. The Office argues that YSA waived its Section 1108(a) argument by failing to raise it below. If not waived, the Office responds that Section 1108(a) of the Law is not applicable because YSA and YSA-PA did not share employees. The Office also rejects YSA's theory that the Office's remedy for UC taxes owed is limited to the amount of the bond or security deposit, based on the absence of such a limitation in the Law, and the Office's authority to assess unpaid taxes in Section 304 of the Law.

YSA next argues that the assessment violates its property rights protected by several provisions of the Pennsylvania and U.S. Constitutions, which the Office rejects. YSA argues in its brief to this Court that taking YSA's property to satisfy the liability of another would violate YSA's property rights under Article

15

1, Section 1 of the Pennsylvania Constitution.[4]  YSA argues that making YSA liable for YSA-PA's liability would be discriminatory in violation of Article 1, Section 26 of the Pennsylvania Constitution.[5]  YSA argues that holding it liable for YSA-PA's tax liability would violate the uniformity clause in Article 8, Section 1 of the Pennsylvania Constitution.[6]  YSA further argues that taking YSA's property without just compensation violates the Fifth Amendment to the U.S. Constitution.[7]  YSA also argues that making YSA liable for another's liability would deprive YSA of its property without due process of law, and would discriminate against it in violation of the Fourteenth Amendment to the U.S. Constitution.[8]  The Office agrees that a constitutional violation is within the scope of appellate review, but denies that the imposition of successor liability violates any of YSA's constitutional rights.

We discern no legal error and affirm the Department's decision to hold YSA liable for YSA-PA's UC payments based on successor liability, which is

---

[4] Pa. Const. art. I, §1.  Article I, section 1 states:  "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness."

[5] Pa. Const. art. I, §26.  Article I, section 26 states:  "Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right."

[6] Pa. Const. art. VIII, §1.  Article VIII, section 1 states:  "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws."

[7] U.S. Const. amend. V.  The takings clause of the Fifth Amendment provides:  "[N]or shall private property be taken for public use, without just compensation."

[8] U.S. Const. amend. XIV, §1.  The Fourteenth Amendment provides, in relevant part:  "[N]or shall any State deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

16

supported by the applicable law as applied to substantial evidence in the record. YSA did not waive its legal argument that successor liability does not apply to reimbursable employers under the Law, because it raised the issue before the Department in its petition for reassessment by stating that the "asserted successor liability is not applicable." R.R. at 4a. YSA argued the issue before the hearing officer and in its post-hearing brief. *See id.* at 300a, 467a. Although YSA did not address this issue in a detailed way below, it sufficiently raised the issue to comply with Section 304(b) of the Law and Department regulation. In *Wing v. Unemployment Compensation Board of Review*, 436 A.2d 179 (Pa. 1981), the Supreme Court held that Pa. R.A.P. 1551 governed waiver before the UC Board, and that issues "not raised by the employer before lower tribunals are waived." Because YSA raised this issue before the Department, we conclude that it is not waived.

Although sufficiently raised, we are not persuaded by YSA's argument that successor liability does not apply to reimbursable employers, based on our review of the applicable provisions of the Law, and not simply a review of Article XI of the Law addressing non-profit employers. Importantly, the definition of "contributions" in Section 4(g) of the Law includes not only payments made by contributing employers but "includes, where appropriate in the enforcement provisions of [the Law], payments in lieu of contributions to be paid by employers operating on a reimbursement basis" as provided in Article XI of the Law. Section 304(b) of the Law is one such enforcement provision, which provides "any employer against whom an assessment is made" the right to petition the Department for reassessment, and to participate in a hearing, which is what YSA did here. The Law does not provide that liability for unpaid UC taxes, whether in the first instance or

through successor liability, is dependent upon the payment method chosen by the employer.

We also reject YSA's argument that the Department's finding of successor liability is not supported by substantial evidence. In *Stage Road Poultry Catchers v. Department of Labor and Industry, Office of Unemployment Compensation Tax Services*, 34 A.3d 876, 885-86 (Pa. Cmwlth. 2011), our Court provided the following guidance on how to determine whether substantial evidence supports a finding in an appeal before the Office.

> Substantial evidence is defined as relevant evidence upon which a reasonable mind could base a conclusion. In determining whether there is substantial evidence to support the Board's findings, this Court must examine the testimony in the light most favorable to the prevailing party, giving that party the benefit of any inferences that can logically and reasonably be drawn from the evidence. A determination as to whether substantial evidence exists to support a finding of fact can only be made upon examination of the record as a whole. The Board's findings of fact are conclusive on appeal only so long as the record, taken as a whole, contains substantial evidence to support them. "The fact that [a party] may have produced witnesses who gave a different version of the events, or that [the party] might view the testimony differently than the Board is not grounds for reversal if substantial evidence supports the Board's findings." *Tapco, Inc. v. Unemployment Compensation Board of Review*, [] 650 A.2d 1106 ([Pa. Cmwlth.] 1994). Similarly, even if the evidence exists in the record that could support a contrary conclusion, it does not follow that the findings of fact are not supported by substantial evidence. [(Citations omitted).]

In *Fizzano Brothers Concrete Products, Inc. v. XLN, Inc.*, 42 A.3d 951 (Pa. 2012), the Supreme Court considered a question of corporate successor liability under the *de facto* merger doctrine, in which it approved the test for successor

18

liability in *Schneider*, and the test for *de facto* merger in *PECO*. The Court reviewed the substance of the underlying transaction to determine whether "under the facts established, for all intents and purposes, a merger has or has not occurred between two or more corporations, although not accomplished under the statutory procedure." *Fizzano Brothers*, 42 A.3d at 969. "[W]ith a focus on substance over form where corporate transactions are concerned" the Court rejected a narrow, mechanical application of continuity of ownership, which was at issue there, holding that "the manner by which it [continuity of ownership] may be shown is more extensive and attuned to the transactional realities." *Id.* at 970.

Under the applicable standard and scope of review, and following the Supreme Court's guidance to focus on substance over form where corporate transactions are concerned, we discern no error in the Department's finding on successor liability based on substantial evidence in the entire record. Clearly, no formal merger between YSA and YSA-PA occurred here. However, the undisputed record evidence shows that YSA-PA's employees were transferred to YSA in the first quarter of 2015, and that YSA continues to provide various treatment services to at-risk youth, as did YSA-PA when it was active. Mr. Dawson and Mr. Pitcavage filed various registration and election forms with the Department on behalf of both YSA-PA and YSA, supporting a finding of commonality of management and ownership of the two entities. A YSA employee, Ms. Dawson, informed the Office that YSA-PA was closed, YSA-PA's bond was cancelled, and the 990 form prepared by YSA-PA for the year ending June 30, 2016, showed a negative balance and described YSA-PA as inactive for the current fiscal year. Under these facts, we conclude that the Department's finding of successor liability is supported by substantial evidence.

19

We reject YSA's argument that the Office should be barred from collecting tax from YSA when it failed to pursue YSA-PA, because that argument has no support in the record or under the Law. YSA did not waive its Section 1108(a) argument because it raised it in its post-hearing brief. *See* R.R. at 473a. However, we reject YSA's argument that Section 1108(a) requires apportioning liability between YSA and YSA-PA, because the record contains no evidence that UC benefits were paid to any individual "based on wages paid by more than one employer." The record shows that employees moved from YSA-PA to YSA in the first quarter of 2015, but it does not show that any employees received wages from both YSA-PA and YSA for any period.

We are also unpersuaded by YSA's attempt to limit the Office's authority to collect UC taxes owed to the amount of YSA's bond when the Law contains no such limitation. The Office's authority to assess an employer for UC taxes owed is outlined in Section 304 of the Law. Section 304 does not distinguish between contributory or reimbursable employers.

We further conclude that YSA waived its constitutional arguments because it failed to develop their arguments or cite to any authority in its brief to this Court.[9] YSA simply asserted that the imposition of UC tax through successor liability violated its property rights, named the constitutional provisions, did not include the language of the cited constitutional provisions, and did not cite to any

---

[9] *See* Pa. R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part . . . the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."); *Commonwealth v. Spotz*, 716 A.2d 580, 585 n.5 (Pa. 1998), *cert. denied*, 526 U.S. 1070 (1999) (holding that the failure to develop issue in appellate brief results in waiver); *Browne v. Department of Transportation*, 843 A.2d 429, 435 (Pa. Cmwlth. 2004) ("At the appellate level, a party's failure to include analysis and relevant authority results in waiver.").

authority for this argument. Because it failed to develop its constitutional arguments in any meaningful way, YSA waived that issue.

Accordingly, and for the foregoing reasons, the Department's decision is affirmed.

_____
MICHAEL H. WOJCIK, Judge

Judge Wallace did not participate in the decision of this case.

21

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Youth Services Agency,                    :
                                          :
                    Petitioner            :
                                          :
          v.                              : No. 423 C.D. 2021
                                          :
Department of Labor and Industry,         :
Office of Unemployment                    :
Compensation Tax Services,                :
                                          :
                    Respondent :

# **O R D E R**

AND NOW, this 28th day of December, 2022, the Order of the Executive Deputy Secretary of Labor and Industry of the Department of Labor and Industry dated March 19, 2021, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge